ARTHUR H. HOWLAND vs. GEORGE FLOOD.

SAME vs. AUGUSTUS NEWTON.

SAME vs. A. D. HOLT.

Suffolk.   November 16, 1893. — February 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Libel — Privileged Communication — Evidence.*

An action for libel was brought against the members of an investigating committee
appointed by a town with which the plaintiff had a certain contract, for defama-
tory matter contained in a printed report made by them to the town.  *Held*, that
in making the report the committee was performing a duty imposed upon it, and
was communicating to the voters and taxpayers of the town the results of an in-
vestigation in which they had an interest, and which they had the right to know
and act upon, and the occasion was such as to protect the committee from lia-
bility for such statements contained in the report as were made in good faith,
without malice, and with reasonable cause to believe them to be true, and which
did not go beyond what was fairly required of them in the discharge of their duty.

In an action for libel against the members of an investigating committee appointed
by a town with which the plaintiff had a certain contract, the libel set out in the
declaration charged the plaintiff, in substance, with larceny, dishonesty, worth-
less financial standing, and corrupt practices in his profession as a civil engineer.
The answer contained a general denial, a plea of privilege, and an allegation of
the truth of the charges, except as to the charge of larceny, and as to that and
all other statements that they were made in good faith, without malice, and to
persons interested in the matters and none other.   *Held*, that upon the issues
thus presented the question whether the committee investigated the system of
waterworks in process of construction by the plaintiff, or what were the merits of
the controversy between the plaintiff and the town for whom the committee was
acting, as well as what a sub-contractor in the conduit line which the plaintiff was
engaged in building said to another member of the committee not one of the de-
fendants about the system of waterworks, or to the committee about the conduit
line, or what the plaintiff said to one of the defendants about an extension of the
contract, was immaterial.

At the trial of an action for libel against the members of an investigating committee
appointed by a town with which the plaintiff had a certain contract, for defama-
tory matter contained in their printed report to the town, another member of the
committee not a party to the proceedings was asked by the defendants whether
the committee called on business men in Boston who were engaged in the same
kind of business as the plaintiff, and who knew him, to inquire of them as to
his financial standing and reputation for honesty, and also whether the servants
or agents of the B. Manufacturing Company in Boston told the committee that the
plaintiff had been to see them, and had requested them to make cheaper machines
for the waterworks which were being constructed for the town for which the
defendants were acting at a smaller price than the contract called for, saying
that the water commissioners would never know the difference.   Both questions

were excluded. *Held*, that the defendants were entitled to show, not only that the report was made by them as the result of their investigations, but, especially in view of the privilege attaching to the occasion, and as bearing on the question of their good faith, that the statements regarding the transaction with the B. Manufacturing Company and regarding the financial standing and reputation for honesty of the plaintiff in substance like those contained in the alleged libel were made to them by persons who, they had reason to believe, were credible, and under circumstances which justified them in relying and acting upon them, and the exclusion of the questions gave the defendants good ground of exception. At the trial of an action for libel against the members of an investigating committee appointed by a town with which the plaintiff had a certain contract, for defamatory matter contained in their printed report to the town, the defendants, in support of their plea of justification, having testified that at an interview between them and the plaintiff the latter proposed to one H., chairman of the board of water commissioners for the town, that H. should dispose of certain bonds that were to be negotiated by the town in order to raise money to pay for the waterworks and to divide with him any premium that might be received therefrom, the plaintiff, in rebuttal, was asked from what source he was informed that the town was to obtain the money to pay for the waterworks, and further whether he made any bargain with the town to take the bonds, and, having replied to the latter question in the affirmative, he was asked to state what the bargain was, and with whom it was made. One W., a witness for the plaintiff who was present at the interview, was asked to state whether the plaintiff said to the committee that he had entered into a corrupt bargain with H. to share any excess of premiums on the bonds to be sold by the town. *Held*, that the evidence was properly admitted in reply to evidence introduced by the defendants.

THREE ACTIONS OF TORT, for libel.

The declaration, omitting the innuendoes, alleged that the plaintiff was a civil engineer, and that the defendant falsely and maliciously published, wrote and published, and caused to be written, printed, and published of the plaintiff a libel, consisting of the following words: " The first man we interviewed on the standing of Howland, who was a man your whole committee had confidence in, told us that Howland would steal; that he caught him at it, and gave instructions to all his help to watch him whenever he came into his place of business; that his ability as civil engineer was not to be questioned, but that he was dishonest, a smooth, plausible, oily talker; and that his note for a thousand dollars was not worth ten cents. We followed this up among other well known business concerns, and were unable to find anything to his advantage, either as a square business man, or as to his financial standing. Mr. McClellan sent him to Montgomery, Ala., where he was working for him under a salary, to obtain the franchise to put in waterworks in

that place.  Howland took the franchise out in his own name, and returned to Boston, and tried to sell it to McClellan, his employer.  McClellan told him that he guessed he would dispense with his services.  The Chapman Valve Company, in whose employ he was, instructed him to get up a book illustrating and describing their works.  He did so; got the book copyrighted in his own name, and tried to make them pay him before he would allow them to dispose of the books.  He went to the Blake Manufacturing Company and tried to induce them to construct the pumps called for in the specifications in the possession of the water commissioners of poorer and cheaper materials, and cut down the cost two thousand dollars, saying that the water commissioners will never know the difference, and they will answer all purposes.  The Blake Manufacturing Company informed him they did not do that kind of business." Whereby the plaintiff has suffered much annoyance, and has been disgraced, and has suffered in his credit, and has been injured in his reputation and business.

There was also a count alleging that the plaintiff was a member of the firm of Howland and Ellis, carrying on the profession and business of civil engineers in Boston, and that in consequence of the publication of the libel above set forth the plaintiff's firm was injured in its credit and reputation, and that its business suffered special damages; and in support of the latter allegation a specification of the contracts claimed to have been lost by reason of the alleged libel was set forth.

The libel complained of was contained in the report of an investigating committee appointed by the inhabitants of the town of Maynard, which was printed in a newspaper published in that town, and which recited that a contract in writing was made on August 14, 1888, by the water commissioners of the town with the plaintiff's firm, who agreed to build a complete system of waterworks for the town for a certain sum, to be completed on or before December 1, 1888; that on said December 1 only a small portion of the works had been completed, and the plaintiff's firm had not exerted itself to complete the same; that after said December 1 the plaintiff's firm applied to the water commissioners for an extension of time, which was granted upon the condition that the plaintiff's firm would sign a proper

extension in writing, which the commissioners prepared and submitted to them for their approval; that the plaintiff's firm refused to sign the extension ; that the committee believed that the written extension was just and equitable to both parties, taking into consideration the time of the year, " and the manner and way Howland and Ellis had been conducting and prosecuting the work, and the additional light and knowledge that they had received since August 14th last concerning the characters and financial standing of Howland and Ellis, especially in regard to Howland "; that the commissioners on December 17 notified the plaintiff's firm, in writing, to quit work ; that the committee found " that the greater part of the work performed before December 1 was not done in accordance with the terms of the contract, and that the water commissioners were justified in withholding their approval and acceptance of the same," and the particulars in which the work was claimed to be defective were specified in detail; and that the committee found that the specifications in the hands of the commissioners differed from those in the possession of Howland, and, knowing the commissioners' standing, " we determined to know Howland's. This was the result." Then followed the alleged libellous matter set forth in the declaration. The report afterward went on to recite that the committee decided that the specifications in the hands of the commissioners were the right ones ; that after the committee had made this investigation in regard to Howland he came before them, and made certain favorable statements regarding himself and relating to the work, " but could give us no light on why he permitted the work to be performed in this unsatisfactory manner, — we had investigated him before we met him "; that under the contract the plaintiff's firm was to satisfy the commissioners of the discharge of all liens before they were entitled to pay ; and that the plaintiff's firm had received from the town a certain sum, and transferred to one Rice all their rights and claims against the town to a certain amount, " and it looks to us as if Howland and Ellis did not intend to pay for the material now in town, or for the labor performed." The report then reflected severely upon one of the water commissioners named Nyman, and stated· that " we believe that he has aided and abetted Howland and Ellis,

and worked against and wilfully and intentionally neglected the interests of the town ; that he is ready and willing to aid them in their scheme to swindle the town " ; and closed as follows : " We recommend that the town have nothing more to do with Howland and Ellis, except to settle up with them, if they can in any way that is for the interest of the town, and, if not, oppose them in every way possible ; for we believe that Howland and Ellis have no claim against the town under their contract which entitles them to recover anything."

The answer contained a general denial, set up generally the truth of the alleged libellous statements except as to the charge of larceny; and as to that and all other statements that they were made in good faith, without malice, and to persons interested in said matters and none other, and averred that the publication was privileged.   Trial in the Superior Court, before *Braley*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that in August, 1888, the firm of Howland and Ellis, of which firm the plaintiff was a member, contracted with the town of Maynard to construct in and for said town a system of waterworks, and to have the same finished on or before December 1, 1888; that a controversy arose between the town and the plaintiff's firm in respect to the manner and progress of the work under their contract; and that at a meeting of the inhabitants of the town of Maynard, held on January 24, 1889, a committee of five persons, of whom the defendants were three, was chosen to investigate the water system in process of construction, and to report their doings at a subsequent meeting.   On March 8, 1889, the committee made a written report, which contained the alleged libellous statements set forth in the declaration.   The report was written by Joseph W. Reed, another member of the committee, and was signed by himself and the defendants.   It was presented to the town meeting held on March 8, 1889, with the assent of the defendants, who were present and heard it read by Reed, and it was afterward printed in the Maynard Enterprise, a newspaper published in Maynard, on March 9, 1889.

The defendants testified that when they signed the report they had no ill feelings toward the plaintiff, and that after

signing it they gave no directions to have it printed in any form.

Joseph W. Reed, called as a witness for the plaintiff, was asked by the defendant:—

" *Q.* Mr. Reed, did you, after your committee was appointed, investigate the system of waterworks in the town of Maynard ?

" *A.* Yes.

" *Q.* What investigation of that system did you make ? . . .

" *Q.* Mr. Reed, did your committee call on business men in the city of Boston, who had been and were then engaged in the same kind of business, and who knew Mr. Howland, and were engaged in the same kind of business Mr. Howland was then engaged in, and inquire of them about Mr. Howland's financial standing or reputation for honesty ? . . .

" *Q.* Did Mr. Foran, or Mr. Turner, at the office of the Blake Manufacturing Company in Boston, tell your committee that Mr. Howland had been to them and requested them to make cheaper machines or machinery for the Maynard waterworks at a sum two thousand dollars less than the price which was understood should be paid, and that the water commissioners would never know the difference ?

" *Q.* What did Mr. Rooke [the sub-contractor on the conduit line and reservoir] state to you with reference to the Maynard waterworks?

" *Q.* Did your committee have any conversation with Mr. Rooke at that interview in Maynard about the conduit line — a' portion of the Maynard waterworks?"

The defendant Flood was asked:

" *Q.* Did Mr. Howland say anything to your committee about any extension of his contract?"

In reply to an inquiry by the judge, the counsel for the defendants stated that he expected to show that the committee of which the defendants were members tried to settle with Howland; and that it was one of their duties under the vote, and offered to show the terms and conditions of the proposed settlement.

These questions were excluded, and the defendants excepted.

The defendants asked to be allowed to introduce evidence in relation to the merits of the controversy between the town and

the plaintiff's firm under the contract aforesaid ; but the judge declined to allow any such evidence to be introduced, except as to matters tending to show that the plaintiff was dishonest, and also any transactions with the Blake Manufacturing Company referred to in the alleged libel, and said that the defendants might introduce evidence tending to prove the truth of any libellous matter set out in the declaration, and as to which the truth as a justification was pleaded ; also that the defendants might show that they made the report as a result of their investigation ; and evidence as to these matters was introduced by the defendants.

The defendants testified that, at an interview between them and the plaintiff, the latter suggested or proposed to one Thomas Hillis, a member of the committee and chairman of the board of water commissioners, that he, Hillis, should dispose of certain bonds which were to be negotiated by the town of Maynard in order to raise money to pay for the waterworks and divide with the plaintiff any premium that might be received therefrom.

In rebuttal, the plaintiff was asked :

" Q. From what source was the town, as you were informed, to obtain the money to pay for the waterworks ?

" Q. Did you make any bargain with the Water Board to take those bonds ?  A.  I did.

" Q. State what the bargain was, and with whom it was made."

One Williams, who was present at the interview between the plaintiff, the defendants, and the committee, was asked, " Whether or not Mr. Howland stated to the committee that he had entered into a corrupt bargain with Thomas Hillis to share any excess of premiums on the bonds to be sold by the town ? "

The evidence was admitted, and the defendants excepted, the objection being to substance, and not to form.

The defendants requested the judge to rule that so much of the report as contained the alleged libellous matter was a privileged communication. The judge declined so to rule, and the defendants excepted.

Full and specific instructions were given to the jury upon all issues raised in the case, to which no exception was taken.

The jury returned a verdict for the plaintiff in each case ; and the defendants alleged exceptions.

*J. Hillis,* for the defendants.

*E. Avery,* (*H. L. Baker* with him,) for the plaintiff.

MORTON, J. In making the report the defendants were performing a duty imposed upon them, and were communicating to the voters and taxpayers of the town the results of investigations in which they had an interest, and which they had the right to know and act upon. *Bradley* v. *Heath,* 12 Pick. 163. The occasion therefore was such as to protect the members of the committee from liability for any statements contained in the report that were made in good faith, without malice, and with reasonable cause to believe them to be true, and which did not .go beyond what was fairly required of them in the discharge of their duty. The occasion was not such as to protect them absolutely from liability. There are comparatively few cases in which parties are protected absolutely from liability for statements which turn out to be defamatory. If the report contained anything in excess of the privilege, the members signing it were liable. Whether it did contain anything of that character was a question of fact for the jury, upon which we must assume, in view of the statement in the exceptions that " full and specific instructions were given . . . upon all issues raised in the case," that the jury received suitable instructions. See *Bradley* v. *Heath,* 12 Pick. 163; *Gassett* v. *Gilbert,* 6 Gray, 94; *Smith* v. *Higgins,* 16 Gray, 251; *Brow* v. *Hathaway,* 13 Allen, 239, 243; *Atwill* v. *Mackintosh,* 120 Mass. 177; *Wright* v. *Lothrop,* 149 Mass. 385; *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 243; *Byam* v. *Collins,* 111 N. Y. 143; Odgers, Libel and Slander, 197.

The libel set out in the declaration charged the plaintiff, in substance, with larceny, dishonesty, worthless financial standing, and corrupt practices in his profession as a civil engineer. The answer is a general denial, privilege, and the truth except as to the charge of larceny, and as to that and all other statements that they were made in good faith, without malice, and to persons interested in said matters and none other. Manifestly, upon the issues thus presented it was immaterial whether the committee investigated the system of waterworks in the town of Maynard, or the merits of the controversy between the plaintiff and the town, or what Rooke said to Reed about the Maynard waterworks, or what the conversation was between

Rooke and the committee about the conduit line, or what was said by the plaintiff to the defendant Flood about an extension of the contract. So far as appears, none of these questions related to any of the issues on trial.

Both of the two remaining questions to Reed were objectionable in form, and may have been excluded for that reason, though it seems more probable, from the statement of the rulings of the court near the close of the exceptions, that they were not. The exceptions are obscure, and it is difficult to understand the precise ground on which the trial proceeded in respect of the matters referred to in these two questions. The defendant not only pleaded the truth, but that the communication was privileged, and the occasion was, as we have seen, one of qualified privilege. In that view of the case, the question was not whether the statements regarding the matters referred to in the questions were true or were hearsay, but whether, in the first place, they were made at all as the defendants stated, and, in the next place, whether the communication upon those matters was made by the defendants in good faith, and with reasonable cause to believe and in the belief that what was said by them was true. *Spill* v. *Maule*, L. R. 4 Ex. 232, 237. *Chatfield* v. *Comerford*, 4 F. & F. 1008. If the occasion had not been privileged, still the fact that the alleged libel showed on its face that the defendants relied on statements made by others, though it would have formed no excuse for the publication, would have been admissible in mitigation of damages. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238. But the court declined to allow any evidence to be introduced of the transactions with the Blake Manufacturing Company, referred to in the alleged libel, though it permitted the defendant to introduce evidence tending to prove the truth of any libellous matter set out in the declaration as to which the truth was pleaded, and to show that the report was made by the committee as the result of their investigations. The fair construction of this is, we think, that the questions to Reed were excluded because, for some reason, the court deemed them incompetent in substance. It is true that the exceptions state that full and specific instructions, to which no exception was taken, were given to the jury upon all issues. But it is hardly to be supposed that instructions were given upon matters

that were ruled out. We think that the defendants were entitled to show, not only that the report was made by them as the result of their investigations, but, especially in view of the privilege attaching to the occasion and as bearing on the question of their good faith, that statements regarding the transaction with the Blake Manufacturing Company and the financial standing and reputation for honesty of the plaintiff in substance like those contained in the alleged libel were made to them by persons who they had good reason to believe were credible, and under circumstances which justified them in relying and acting upon them. *Spill* v. *Maule*, L. R. 4 Ex. 232. *Lister* v. *Perryman*, L. R. 4 H. L. 521. *Chatfield* v. *Comerford*, 4 F. & F. 1008. On this ground, we think the exceptions must be sustained. The remaining questions to the plaintiff and one Williams were properly admitted in reply to evidence introduced by the defendants.          *Exceptions sustained.*