Montgomery, Appellant, *v.* Philadelphia.

Argued November 14, 1957.   Before JONES, C. J.,
BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN,
JJ.

*Robert H. Arronson,* with him *Herbert H. Hadra* and *Maurice Freedman,* for appellant.

*Thomas A. Masterson,* Deputy City Solicitor, with him *Isador Kranzel,* Assistant City Solicitor, and *David Berger,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE COHEN, March 24, 1958:

On this appeal we are called upon to review the action of the trial court in dismissing on preliminary objections plaintiff's complaint brought against the individual defendants, (the Deputy Commissioner of Public Property of Philadelphia, and the City Architect), and against the City of Philadelphia on the theory of *respondeat superior,* for defamatory statements allegedly made by these officials in the course of their duties.

Plaintiff, Joseph W. Montgomery, trading as Montgomery Construction Company, a building contractor, undertook to construct a police station and a combined police and fire station for the city. It is alleged that on January 21, 1957, the individual defendants in response to a reporter's questions concerning the city's delay in utilizing these stations stated that the buildings had been faultily constructed and were not erected in conformity with the building plans and specifications. The defendants further stated that as a result of their unsatisfactory experience with the plaintiff,

they would not qualify him to receive future city contracts. Their remarks were subsequently published in a local newspaper. The plaintiff thereupon brought suit alleging that the individual defendants, acting on their own behalf and on behalf of the defendant city, within the scope of their authority and during the course of their employment, had maliciously, wilfully and falsely defamed plaintiff in his personal and business reputation.[1]

The city filed preliminary objections asserting immunity to suit because the acts of its agents complained of were done in the performance of a governmental function. The individual defendants also filed preliminary objections contending that as governmental officers acting within the scope of their official duties, they were absolutely privileged in making the allegedly defamatory statements. The objections of all defendants were sustained by the court *en banc*, and the complaint dismissed for failure to state a cause of action.

On this appeal assuming that the statements complained of were defamatory, that they were made by the individual defendants, and that the defendants were responsible for their publication, we proceed to

---

[1] Plaintiff in his brief and at oral argument contends that the individual defendants acted "on behalf of and in the interest of the city and within the scope of their authority to defeat monetary claims made by plaintiff-appellant against the city." and "at the same time, in their own individual interests, to protect themselves and to cover up the mistakes, errors and misleading statements made by them." If the defendant officials were acting within the scope of their authority and were by virtue of their position entitled to absolute privilege, the fact that their statements were made also for their own personal motives would be immaterial as would be the presence of malice or want of reasonable or probable cause. See *Matson v. Margiotti*, 371 Pa. 188, 198, 88 A. 2d 892 (1952); *Spalding v. Vilas*, 161 U. S. 483 (1896).

consider the defense of absolute privilege raised by the two city officers.

The defense of privilege in cases of defamation "rests upon the . . . idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." Prosser, Torts 607 (2nd ed. 1955). Thus, the law recognizes that it is essential that *true* information shall be given whenever it is reasonably necessary for the protection of certain interests of the public. "In order that such information may be freely given, it is necessary to afford protection against liability for misinformation given in an honest and reasonable effort to protect or advance the interest in question. Were such protection not given, true information which should be given or received would not be communicated through fear of the persons capable of giving it that they would be held liable in an action of defamation unless they could meet the heavy burden of satisfying a jury that their statements were true." 3 Restatement, Torts, Ch. 25, Topic 3, Scope Note (1938). When for the public good and interest of society a communication should be published it is said to be made on an "occasion of privilege" and the defamatory statement is itself "qualifiedly" or "conditionally" privileged. See 3 Restatement, Torts §593 (1938) ; 53 C.J.S., Libel and Slander §89 (1948). So, communications made by any public officer in the performance of his official duties are held to be made on an occasion of privilege. 53 C.J.S., Libel and Slander §113 (1948). See also *Matson v. Margiotti,* 371 Pa. 188, 193-194, 88 A. 2d 892 (1952) ; *Barry v. McCollom,* 81 Conn. 293, 70 Atl. 1035 (1908) ; *Peterson v. Steenerson,* 113 Minn. 87, 129 N.W. 147 (1910) ; 3 Restatement, Torts §598

(1938). However, even though a public officer, in the first instance, establishes the existence of a privileged occasion for a defamatory publication,[2] he may nevertheless be subject to liability if a plaintiff meets the burden[3] of persuading the factfinder[4] that the occasion was abused by showing that the defamatory communication was made for an improper motive, in an improper manner, or was not based upon reasonable or probable cause.[5]

To meet this contingency, the defense of *absolute privilege,* or complete immunity from liability for the publication of defamation was created.

"*Absolute privilege,* as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory state-

---

[2] *Montgomery v. Dennison,* 363 Pa. 255, 263-264, 69 A. 2d 520 (1949) ; Prosser, Torts 629 (2nd ed. 1955) ; 3 Restatement, Torts §613 (1938).

[3] *Montgomery v. Dennison,* supra, note 2, 363 Pa. at 262-265; *Dempsky v. Double,* 386 Pa. 542, 546-547, 126 A. 2d 915 (1956) ; *McGaw v. Hamilton,* 184 Pa. 108, 114, 39 Atl. 4 (1898) ; *Cook v. Pulitzer Publishing Co.,* 241 Mo. 326, 145 S.W. 480 (1912) ; *Hayden v. Hasbrouck,* 34 R. I. 556, 84 Atl. 1087 (1912) ; *Williams Printing Co. v. Saunders,* 113 Va. 156, 73 S.E. 472 (1912) ; *Gattis v. Kilgo,* 128 N. C. 402, 38 S.E. 931 (1901) ; 3 Restatement, Torts §613 (1938) ; Prosser, Torts 629 (2nd ed. 1955).

[4] The question of whether a privileged occasion was abused is for the determination of a jury unless the facts are such that but one conclusion can be drawn. *Montgomery v. Dennison,* supra, note 2, 363 Pa. at 264-265; 3 Restatement, Torts §619 (1938) ; Prosser, op. cit. supra, 629. See also *Williams v. Kroger Grocery & Baking Co.,* 337 Pa. 17, 10 A. 2d 8 (1940) ; *Thomas v. Bradbury, Agnew & Co.,* [1906], 2 K.B. 627; *Hamilton v. Eno,* 81 N. Y. 116 (1880) ; *Stevenson v. Northington,* 204 N. C. 690, 169 S.E. 622 (1933) ; *Williams v. Standard-Examiner Publishing Co.,* 83 Utah 31, 27 P. 2d 1 (1933).

[5] *Montgomery v. Dennison,* supra, note 2, 363 Pa. at 264; 3 Restatement, Torts §§600-605 (listing abuses of the privilege).

ments and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it [is] sometimes expressed, within his jurisdiction. . . ."* *Matson v. Margiotti,* supra, 371 Pa. at 193-194.

Whereas qualified privilege could be successful only after a full trial, thus placing a government official at the whims and mercy of a jury, the purpose of absolute immunity is to foreclose the possibility of suit. ". . . [A]bsolute immunity is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business. Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies." Note, 20 U. of Chi. L. Rev. 677, 679 (1953).[6]

---

[6] "The primary basis of absolute privilege is that efficient democratic government requires a free disclosure of facts by public officials and in official proceedings." Note, 69 Harv. L. Rev. 875, 917 (1956).

For, "the protection of the public requires not merely discussion, but information." *Sweeney v. Patterson,* 128 F. 2d 457, 458 (D. C. Cir.), cert. denied, 317 U. S. 678 (1942).

"Indeed, such announcements [about activity of government agencies] serve a useful if not essential role in the functioning of the democratic processes of government." *Glass v. Ickes,* 117 F. 2d 273, 278 n.9 (D. C. Cir. 1940), cert. denied, 311 U. S. 718 (1941).

"It has been argued, however, that free disclosure would be sufficiently encouraged by the granting of a qualified privilege. But often a person will be deterred from making communications by the risk that a trier of fact may find against him, even if he has acted reasonably and without malice. Moreover, since a qualified privilege does not eliminate the necessity of litigating questions of

On the other hand, there are valid arguments against permitting public officials immunity from liability. The merited sterling reputations of innocent persons may be destroyed by unscrupulous public officials who, taking advantage of their positions and the access to the press obtained thereby, widely publish reckless or knowingly false defamation. The need in such cases of compensation for special damages suffered as well as vindication for the harm done to a good name is undeniable. See *Matson v. Margiotti,* supra, 371 Pa. at 202-203; Morris, Torts 297-298 (1953).[7]

---

fact, such as improper motive or unreasonable conduct, the time and money required for this defense would also deter free disclosure. And in the case of public officials, time would be taken from performance of duties which are of importance to the public. . . ." Note, 69 Harv. L. Rev. 875, 917-918 (1956). The earliest statement of the purpose of the privilege appears in *Chatterton v. Secretary of State for India in Council,* [1895] 2 Q.B. 189, 191-192. Lord ESHER, M.R. said: "The reason for the law on this subject plainly appears from what Lord ELLENBOROUGH and many other judges have said. It is that it would be injurious to the public interest that such an inquiry should be allowed, because it would tend to take from an officer of state his freedom of action in a matter concerning the public weal. If an officer of state were liable to an action of libel in respect to such a communication as this, actual malice could be alleged to rebut a plea of privilege, and it would be necessary that he should be called as a witness to deny that he acted maliciously. That he should be placed in such a position, and that his conduct should be so questioned before a jury, would clearly be against the public interest, and prejudicial to the independence necessary for the performance of his functions as an official of state. Therefore the law confers upon him an absolute privilege in such a case."

[7] In *Gregoire v. Biddle,* 177 F. 2d 579 (2nd cir. 1949), cert. denied, 339 U.S. 949 (1950) Chief Judge LEARNED HAND said: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were

In striking a balance between these two opposing policies the courts have declared that the public interest does not demand that all public officials be entitled to absolute privilege, but only that "high ranking officers" be so protected. See *Matson v. Margiotti,* supra, 371 Pa. at 194, 196.

In *Spalding v. Vilas,* 161 U. S. 483 (1896), the United States Supreme Court held that the doctrine of absolute privilege extended to officers of cabinet rank as well as to the president. Since that decision the lower federal courts have included many inferior executive positions within the protection of the principle,[8]

---

possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books." 177 F. 2d at 581.

[8] Held to have been entitled to absolute privilege: E. g. Cabinet officers, *Spalding v. Vilas,* 161 U.S. 483 (1896); *Glass v. Ickes,* 117 F. 2d 273 (D.C. Cir. 1940), cert. denied, 311 U.S. 718 (1941); *Mellon v. Brewer,* 18 F. 2d 168 (D.C. Cir.), cert. denied, 275 U.S. 530 (1927); a Securities and Exchange Commissioner, *Jones v. Kennedy,* 121 F. 2d 40, (D.C. Cir.), cert. denied, 314 U.S. 665 (1941);

although the state courts have been more selective.[9]

It has been suggested that the determination of whether a particular public officer is protected by absolute privilege should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions. Prosser, Torts supra, 782, 784. See also *Barr v. Matteo*, 244 F. 2d 767 (D.C. Cir.), remanded, 2 L. Ed. 2nd 179 (1957); *Colpoys v. Gates*, 118 F. 2d 16 (D.C. Cir. 1941); 3 Restatement, Torts §591 (1938). In the present case the deputy commissioner of public property is vested with most of the powers of the commissioner including the overseeing of the performance of

a member of the Federal Tariff Commission, *Smith v. O'Brien*, 88 F. 2d 769 (D.C. Cir. 1937); subordinate bureau chiefs, *DeArnaud v. Ainsworth*, 24 App. D.C. 167 (1904), error dismissed, 199 U.S. 616 (1905); the superintendent of a hospital, *Cassel v. Overholser*, 169 F. 2d 683 (D.C. Cir. 1948), cert. denied, 336 U.S. 939 (1949); a consul, *United States to Use of Parravicino v. Brunswick*, 69 F. 2d 383 (D.C. Cir. 1934); a Government psychiatrist, *Taylor v. Glotfelty*, 201 F. 2d 51, (6th Cir. 1952); collector of internal revenue, *Tinkoff v. Campbell*, 86 F. Supp. 331 (N.D. E.D. Ill. 1949); a Lieutenant Commander of the Navy, *Miles v. McGrath*, 4 F. Supp. 603 (D.C. Md. 1933).

[9] *Hughes v. Bizzell*, 189 Okl. 472, 117 P. 2d 763 (1941) (president of state university); *Stivers v. Allen*, 115 Wash. 136, 196 Pac. 663 (1921) (U. S. district attorney); *Catron v. Jasper*, 303 Ky. 598, 198 S.W. 2nd, 322 (1946) (a sheriff); *Powers v. Vaughan*, 312 Mich. 297, 20 N.W. 2nd. 196 (1945) (officials of health department); *Schlinkert v. Henderson*, 331 Mich. 284, 49 N.W. 2nd 180 (1951) (liquor control commissioners); *White v. Brinkman*, 23 Cal. App. 2d 307, 73 P. 2d 254 (1937) (a building inspector). Contra, Qualified Privileged Only: *Peterson v. Steenerson*, 113 Minn. 87, 129 N.W. 147 (1910) (postmaster); *Hemmens v. Nelson*, 138 N.Y. 517, 34 N.E. 342 (1893) (principal of a government school); *Peeples v. State*, 38 N.Y.S. 2d 690 (1942) (a state examiner of accounts); *Howland v. Flood*, 160 Mass. 509, 36 N.E. 482 (1894) (Budget Director, member of an investigating committee); *Raymond v. Croll*, 233 Mich. 268, 206 N.W. 556 (1925).

public contracts,[10] and the city architect has the duty of designing and supervising in conjunction with the city engineer, the erection of all new buildings including the police and fire stations that comprise the instant problem.  We need not here determine the line of demarcation, if any there be, which separates offices which are protected by absolute privilege from those which are not.  From the record before us, we are satisfied that judged by any of these criteria the positions held by the individual defendants are such that the public interest requires the grant of absolute privileges.  Both individual defendants had policy-making functions as well as the duty to act according to the directives handed down to them by other city officials.  Plaintiff concedes, and in fact alleges in his complaint, that defendants' duties included informing the public through communications to the press as to the progress of city works.[11]  On this review we are bound to accept his allegations as true.  A refusal to grant the defendants immunity for defamation published in the course of their duties would impair the proper performance of this function.

The public interest demands that these city servants, the individual defendants, be encouraged to inform the community of the progress or the lack of progress of important public works paid for by the taxpayers.  Further, the public has a legitimate concern with the reasons, if any, for apparently unreasonable delays in the performance of city contracts.

---

[10] Philadelphia Home Rule Charter, §3-701.

[11] Compare, *Colpoys v. Gates*, 118 F. 2d 16 (D.C. Cir. 1941) with *Glass v. Ickes*, 117 F. 2d 273 (D.C. Cir. 1940), cert. denied, 311 U.S. 718 (1941).  See also *Matson v. Margiotti*, 371 Pa. 188, 203-205, 209-210, 88 A. 2d 892 (1952) ; *Barr v. Matteo*, 244 F. 2d 767 (D.C. Cir.), remanded, 2 L. Ed. 2d 179 (1957).

188

For these reasons we hold that the individual defendants are absolutely privileged in making defamatory communications to the press which are within the scope of their duties and authority. It follows that the city cannot be held liable therefor on the theory of *respondeat superior*. See Restatement, Agency §§217, 247 (1933). Cf. *Koontz v. Messer*, 320 Pa. 487, 181 Atl. 792 (1935).

The action of the court below in dismissing the complaint on preliminary objection will be affirmed.

Judgment affirmed.

Mr. Justice MUSMANNO concurs in the result.