**Samuel R. DICKEY**

v.

**CBS, INC.**

**Civ. A. No. 74–1867.**

United States District Court,
E. D. Pennsylvania.

Jan. 24, 1975.

Francis X. Nolan, Donsky, Katz, Levin & Dashevsky, Philadelphia, Pa., for non-party witness.

## MEMORANDUM OPINION AND ORDER

HIGGINBOTHAM, District Judge.

### INTRODUCTION

Plaintiff, Samuel R. Dickey, filed this diversity action on July 23, 1974, alleging in his complaint that the defendant, CBS, Inc., through its facilities at WCAU–TV, Channel 10, Philadelphia, had on May 5 and 6, 1974, telecast certain "false, malicious, defamatory and libelous" statements about him. The complaint sought punitive damages in the amount of $2,000,000.00. On September 20, 1974, defendant answered, raising several affirmative defenses. On October 15, 1974, plaintiff gave notice that he would take the oral deposition of a non-party witness, the Honorable Lawrence G. Williams, United States Representative for the Seventh District of Pennsylvania, on November 12, 1974.[1] On November 8, 1974, Representative Williams moved for a protective order and to quash the subpoena served on him on November 1, 1974, claiming that any statements he may have made about the plaintiff were absolutely privileged. Counsel for both Representative Williams and plaintiff have submitted briefs in support of their respective positions, and oral argument was heard on the motion on December 20, 1974. For reasons that will hereinafter appear, I have concluded that my decision on the motion to quash is controlled in large part by the Speech or Debate Clause of the Constitution of the United States, Art. I, § 6, cl. 1, that the clause does not prohibit the deposing of Representative Williams,[2] and that the motion to quash should be denied.

Alvin S. Ackerman, Ackerman & Mylotte, Upper Darby, Pa., for plaintiff.

[1]. Representative Williams is not named in the complaint. Defendant, CBS, Inc., however, alleges that in the course of one of its television programs he made some of the purportedly libelous statements which are the subject matter of the complaint. See Answer of Defendant, CBS, Inc., Doc. # 5, at 1–2.

[2]. Mr. Williams was defeated in the 1974 Republican party primary in his district, and is no longer a Member of Congress. His present status, however, is irrelevant to this inquiry, which focuses upon conduct that took place while he was still a Congressman.

## THE SPEECH OR DEBATE CLAUSE

### A. *Legislative Activities Are Protected.*

■ The bedrock for any claim of immunity or privilege by a United States Congressman is Article I, § 6, cl. 1 of the Constitution of the United States, which provides, *inter alia*, that "for any Speech or Debate in either House, they [Members of Congress] shall not be questioned in any other Place." The clause was designed to protect Senators and Representatives from prosecutions which threaten the legislative process, to prevent their intimidation by the Executive Branch of Government and to shield them from accountability before a potentially hostile judiciary. Doe v. McMillan, 412 U.S. 306, 311, 93 S.Ct. 2018, 2024, 36 L.Ed.2d 912 (1973); Gravel v. United States, 408 U.S. 606, 616, 617, 92 S.Ct. 2614, 2622, 2623, 33 L.Ed.2d 583 (1972).

■■ To effectuate the purposes of the Speech or Debate Clause, the courts have often read it broadly. United States v. Johnson, 383 U.S. 169, 180, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966); Doe v. McMillan, *supra*, 412 U.S. at 311, 93 S.Ct. at 2024; Gravel v. United States, *supra*, 408 U.S. at 624, 92 S.Ct. at 2626. Within its protections, the clause embraces everything "generally done in a session of the House by one of its members in relation to the business before it." Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L.Ed. 377 (1881); Doe v. McMillan, *supra*, 412 U.S. at 311, 93 S.Ct. at 2024; Gravel v. United States, *supra*, 408 U.S. at 624, 92 S.Ct. at 2626; United States v. Brewster, 408 U.S. 501, 509, 512–13, 92 S.Ct. 2531, 2536, 2537–38, 33 L. Ed.2d 507 (1972); Powell v. McCormack, 395 U.S. 486, 502, 89 S.Ct. 1944, 1954, 23 L.Ed.2d 491 (1969); United States v. Johnson, *supra*, 383 U.S. at 179, 86 S.Ct. at 754. The conduct thus protected includes not only the remarks of Senators and Representatives in Congressional speeches and debates, but also their voting, their participation in legislative committee hearings, and their preparation of committee reports. Doe v. McMillan, *supra*, 412 U.S. at 311–12, 93 S.Ct. at 2024; Gravel v.

United States, *supra*, 408 U.S. at 624, 92 S.Ct. at 2626. So long as Congressmen act within the "legislative sphere," they are immune from criminal and civil liability. Doe v. McMillan, *supra*, 412 U.S. at 311–12, 93 S.Ct. at 2025; Gravel v. United States, *supra*, 408 U.S. at 624–25, 92 S.Ct. at 2626–27.

### B. *Political Activities Are Not Protected.*

Not everything that a Congressman may regularly do, however, is a legislative act. Doe v. McMillan, *supra*, 412 U.S. at 313, 93 S.Ct. at 2025; United States v. Brewster, *supra*, 408 U.S. at 512, 92 S.Ct. at 2537. In United States v. Brewster, *supra*, Chief Justice Burger discussed in some detail these non-legislative activities of Congressmen, the reasons why Congressmen perform them, and their relation to the Speech or Debate Clause.

"It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech and Debate Clause. These include a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, new releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. *But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.*" Id. 408 U.S. at 512, 92 S.Ct. at 2537. (Emphasis added.)

Counsel for Mr. Williams thus badly misconceives the law when he states that

"a United States Congressman is absolutely privileged and immune from being questioned in a judicial forum." Congressman Williams' Brief in Support of Motion for a Protective Order and to Quash the Subpoena ad Testificandum and Duces Tecum, Doc. #7, at 1. The cases cited by counsel certainly do not support that assertion. Neither Preston v. Edmondson, 263 F.Supp. 370 (N.D. Okla.1967), nor Hill Parents Association, Inc. v. Giaimo, 287 F.Supp. 98 (D.Conn. 1968), is on point. Both dealt, not with legislative immunity, but with the removal provisions of 28 U.S.C. § 1442(a) (1970), while Montgomery v. City of Philadelphia, 392 Pa. 178, 140 A.2d 100 (1968), concerned executive or official immunity, not legislative immunity.

■ Moreover, the doctrine of executive or official immunity, which flavors the holdings of all three of these cases, does not itself support the non-party witness' claim of privilege. Within the federal system, the doctrine is derived from the decision of the United States Supreme Court in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and the scope of inquiry under that doctrine is the same as the scope of inquiry under the Speech or Debate Clause. Doe v. McMillan, *supra*, 412 U.S. at 324, 93 S.Ct. at 2030.[3] In other words, if the activities of a Congressman are not protected by the Speech or Debate Clause, they are not shielded by the doctrine of official immunity either.

■ Precisely because the delivery of a speech by a Congressman outside the Congress is a political, not a legislative activity, it is not entitled to the protection of the Speech or Debate Clause. To be sure, some might think that this conclusion is based on an overly restrictive definition of "legislative activity." If one does not read the older cases within the mold by which they have been recast or redefined by *Brewster, Gravel* and *Doe,* one could reason that the term has a much broader coverage.[4] Yet, even though in Doe v. McMillan, *supra,* the majority said that the Speech or Debate Clause has been read broadly to effectuate its purposes, id. 412 U.S. at 311, 93 S.Ct. at 2024, the Court has nevertheless defined "legislative activity" somewhat narrowly and "political activity" somewhat broadly. As a matter of logic, one could argue that a Congressman who reads verbatim from an official committee report is performing a "legislative" function, that is, informing his constituents. The majority of the Supreme Court, however, has held differently and negated that theory when it stated in Doe v. McMillan, *supra,* that "[a] Member of Congress may not with impunity publish a libel from the speaker's stand in his home district, and clearly the Speech or Debate Clause would not protect such an act even though the libel was read from an official committee report." 412 U.S. at 314, 93 S.Ct. at 2025. Liability would attach to the Congressman because "republishing a libel in such circumstances is not an essential part of the legislative process and is not part of that deliberative process 'by which members participate in committee and House proceedings.' Gravel v. United States, *supra,* [408 U.S.] at 625, at 2627 of 92 S.Ct." Doe v. McMillan, *supra,* 412 U.S. at 314–15, 93 S.Ct. at 2026. The Speech or Debate Clause does not "immunize those who publish and distribute otherwise actionable materials beyond the reasonable requirements of the legislative function." Id. at 315–316, 93 S.Ct. at 2026. As Mr. Justice White, speaking for the court, said in Doe v. McMillan, *supra,* "we cannot accept the proposition that in order to perform its legislative function Congress not only must at times consider and use actionable material but also must

3. The scope of inquiry under the Pennsylvania doctrine of official immunity is treated below at pp. 1336, 1337.

4. See, e. g., the opinion of Mr. Justice Rehnquist, dissenting in part in Doe v. McMillan, *supra,* 412 U.S. at 338, 93 S.Ct. at 2038, and the dissenting opinion of Mr. Justice Brennan in United States v. Brewster, *supra,* 408 U.S. at 529, 92 S.Ct. at 2546.

be free to disseminate it to the public at large, no matter how injurious to private reputation that material might be." Id. at 316, 93 S.Ct. at 2026.

■ In the light of this body of case law interpreting the Speech or Debate Clause, it is clear that the appearance of Congressman Williams on a television show broadcast by defendant was not protected by the clause. The delivery of a speech outside Congress is a political, not a legislative, activity, United States v. Brewster, *supra*, 408 U.S. at 512, 92 S.Ct. at 2537. For the purpose of this motion to quash, I can see no significant difference between a speech outside Congress and a television appearance outside Congress. Because that appearance of Congressman Williams was political rather than legislative, it was not protected by the Speech or Debate Clause, and he would be subject to criminal or civil liability for anything he said or did during that appearance.[5]

In the instant action, of course, Congressman Williams is not exposed to liability of any kind. He is not a party, but rather a non-party witness. For the purposes of this motion to quash, however, I again see no significant difference between being a party to an action and being a non-party witness in an action. Congressman Williams' television appearance was either privileged or it was not. It was not, and therefore he may be questioned about it, whether as a party or a non-party witness. He is subject not only to suit, but to subpoena as well. Accordingly, I hold that the Speech or Debate Clause does not require that the subpoena served on the non-party witness be quashed.

## PENNSYLVANIA IMMUNITY DOCTRINES

This inquiry, however, does not end with my conclusion that the applicable *federal* doctrines of legislative and official immunity did not render Representative Williams' television appearance privileged. The jurisdictional basis for the instant action is diversity, and therefore I must examine the relevant *state* law as well. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question to be answered then becomes: was Representative Williams' television appearance privileged under Pennsylvania doctrines of legislative and official immunity? I hold that it was not.

■ Pennsylvania has its own Speech or Debate Clause, Pa.Const. Art. 2, § 15, P.S., whose language closely tracks that of Article 1, § 6, cl. 1 of the federal constitution. I have not discovered any Pennsylvania cases construing this provision in the context of the facts presented by the instant case. I assume that the Supreme Court of Pennsylvania, if required to interpret Pennsylvania's Speech or Debate Clause, would construe it in the same way that the United States Supreme Court has construed the analogous federal provision. In light of my discussion of the federal Speech or Debate Clause, then, I hold that Representative Williams' television appearance was not privileged under Pennsylvania's Speech or Debate Clause.[6]

■ Pennsylvania also recognizes the doctrine of executive or official immunity. Montgomery v. City of Philadelphia, *supra*. Though I have found no cases which extend this doctrine to legis-

5. Mr. Williams contends that, in his television appearance, he was performing the Congressional function of "informing the public." That argument was considered and rejected in Doe v. McMillan, *supra*. Mr. Justice White wrote that "we cannot accept the proposition that our conclusion, that general, public dissemination of materials otherwise actionable under local law is not protected by the Speech or Debate Clause, will seriously undermine the 'informing function' of Congress." Id. 412 U.S. at 317, 93 S.Ct. at 2027.

6. I am assuming, for the sake of argument only, that the Pennsylvania Courts would extend to a United States Congressman the same protection that Article 2, § 15 of the Pennsylvania Constitution affords their own legislators.

lators generally or to United States Congressmen in particular or to legislators of any kind who are summoned as non-party witnesses, I assume, again for the sake of argument only, that the Pennsylvania courts would make these extensions. Nevertheless, the doctrine, even when read this broadly, does not require that the subpoena to Representative Williams be quashed. In Pennsylvania, the doctrine applies to the official acts of an officer within the scope of his authority. Montgomery v. City of Philadelphia, *supra,* 392 Pa. at 188, 140 A.2d at 105; Matson v. Margiotti, 371 Pa. 188, 196, 88 A.2d 892, 896 (1952); see McCoy v. Commonwealth, 9 Pa.Cmwlth. 107, 305 A.2d 746, 747 (1973); Dubree v. Commonwealth, 8 Pa.Cmwlth. 567, 303 A.2d 530, 534 (1973).

■ Since Congressman Williams was a federal officer, I look to federal law in order to determine which of his acts were official. As my earlier discussion of the applicable federal law indicates, his only official acts were his legislative acts. His television appearance was "political," not "legislative," as those terms have been defined in United States v. Brewster, *supra.* Because it was not "legislative," it was not official. Because it was not official, it was not protected by the Pennsylvania doctrine of executive or official immunity.

## THE INFORMANT'S PRIVILEGE AND THE SEPARATION OF POWERS

■ The remaining arguments of the non-party witness require less detailed treatment. Counsel for Mr. Williams contends that whatever relevant information Mr. Williams possesses is protected by the "informant's privilege." See Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957);

8 Wigmore, Evidence § 2374 (McNaughton rev. 1961).

I intimate no view on whether or to what extent Mr. Williams may validly claim that privilege in this action. At this state of the proceedings, however, invocation of that privilege is certainly premature, and will remain so until plaintiff actually deposes Mr. Williams.

■ Finally, counsel for Mr. Williams argues that to require him to appear for a deposition would violate the doctrine of separation of powers among the three branches of our national government. I do not agree. Such a violation would occur only if this court were to invade the "legislative sphere," where Congressmen are immune from civil and criminal liability. Doe v. McMillan, *supra,* 412 U.S. at 311-12, 93 S.Ct. at 2025; Gravel v. United States, *supra,* 408 U.S. at 624-25, 92 S.Ct. at 2626-27. The relevant cases, however, plainly show that Mr. Williams' television appearance was political, not legislative. Since no invasion of the "legislative sphere" can take place in an inquiry about that appearance, no violation of the separation of powers can occur.

## CONCLUSION

Because the appearance of the non-party witness on a television program broadcast by the defendant was political rather than legislative, it was not protected by the Speech or Debate Clause of the Constitution or by any other federal or state doctrine of immunity. Because it was not so protected, the non-party witness may "be questioned [about it] in any other Place." Accordingly, the motion of the non-party witness for a protective order and to quash the subpoena of November 1, 1974, must be denied. So ordered.