# Malia v. Monchak

*Michael Lynn*, for plaintiffs.
*Albert J. Flora* and *Patrick E. Dougherty*, for defendants.

TOOLE, *J.*, July 14, 1986—We are presented here with preliminary objections filed by defendants in this defamation action. Plaintiffs, Kenneth Malia and his wife, Deborah, filed a five-count complaint based on alleged defamatory statements made about plaintiff Kenneth Malia, vice principal of the Northwest Area Junior-Senior High School. Defendants are the principal (Monchak), superintendent (Vollbrecht), and nine members of the Northwest Area School Board.

Plaintiffs allege in their complaint that in June 1985 defendant Monchak, as principal, issued a written evaluation of plaintiff Kenneth Malia's performance as vice principal and assigned him an "unsatisfactory" rating. In addition, it is alleged that defendant Monchak's written comments and anecdotal records characterized plaintiff as "insubordinate" and "inattentive," and his performance as "inept."

Defendant Vollbrecht allegedly affixed his signature to defendant Monchak's written evaluation of

plaintiff, thereby affirming the "unsatisfactory" rating, and also allegedly recommended to the Northwest Area School Board that plaintiff be discharged as vice principal.

At two informal meetings before the school board (July 8 and July 23, 1985), the aforementioned statements were presented to the board, at which time plaintiff was afforded the opportunity to respond to them. The board decided public hearings should be held on the decision to terminate plaintiff's employment. It is that decision which plaintiffs allege gives rise to a cause of action against the defendant school board members. Over plaintiffs' counsel's objection that in the absence of a predisposition on the part of the school board to terminate plaintiff's employment, no public hearing should be held, a hearing was held on October 3, 1985, attended by the general public. The alleged defamatory statements were communicated to those attending the hearing. On November 18, 1985, at a regularly advertised public meeting, the school board voted to dismiss the termination proceedings instituted against plaintiff Kenneth Malia.

Immediately following the November 18 meeting, it is alleged, defendant board member Saxe made a statement that plaintiff Kenneth Malia was "grossly insubordinate" and defendant board member Hardy, referring to the general turmoil and dissension affecting the school, said to plaintiff Kenneth Malia, "You're the cause of all this."

Plaintiffs allege the statements made were untrue and motivated by malicious personal animosity. As a proximate result of the aforementioned defamatory statements, it is alleged that plaintiff Kenneth Malia has been deprived of his good name and personal and professional reputation. Plaintiff Deborah Malia has allegedly suffered emotionally and physically

debilitating consequences requiring medical intervention and treatment.

Defendants have demurred to each of the five counts and have offered several reasons in support thereof. As to all defendants, it is contended that judicial immunity and "high public official" immunity shield them from liability. It is also contended that as to defendant Vollbrecht and defendant school board members, they are protected by legislative immunity. Next, as to all defendants, it is contended that the statements made constitute mere opinion and are, therefore, not actionable. Further, it is argued that defendant Vollbrecht and defendant school board members cannot be held vicariously liable for any defamatory statements made by defendant Monchak merely because the rating was approved and a full evidentiary hearing scheduled. Nor can the board be liable to plaintiffs since they issued no statements. Lastly, defendants contend that any alleged defamatory statements impute no misconduct to plaintiff Deborah Malia, and therefore she has no cause of action.

Although the law of demurrers in Pennsylvania is well-settled, we briefly note the general principles. Every well-pleaded, material, relevant fact set forth in the complaint, together with all reasonable inferences deducible therefrom, is admitted as true. A demurrer can be sustained only where the complaint shows with certainty that upon the facts averred therein, the law will not permit the plaintiff to recover. *Del Boring Tire Service Inc. v. Barr Machine Inc.*, 285 Pa. Super. 66, 426 A.2d 1143, 1146 (1981). With the foregoing standard of review in mind, we turn to address whether the law will permit the plaintiffs herein to recover.

While we are somewhat confused as to the defenses being raised as well as to whom they are

being assigned, we have reviewed each of them and have made our own conclusions as to the propriety of the defenses available to a particular defendant or defendants. In their accompanying brief, defendants speak of absolute privilege and cite us to various sections of the Pennsylvania Public School Code, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §1-101 et seq. Our own review of judicial immunity and absolute privilege concepts leads us to conclude that all of the defendants, as school officials acting in the discharge of their statutory duty to rate plaintiff, should be accorded absolute privilege.[1] We find *Procopio v. Shamokin Area School District and News Publishing and Printing Co.,* 48 Northumb. L.J. 249 (1976), particularly instructive and supportive of our position.

In *Procopio,* a case strikingly similar to the instant one, an untenured teacher instituted two libel actions against the Shamokin Area School District. On two separate occasions, he alleged, the director of elementary education, who was also the assistant superintendent, acting as agent of the school district, rated plaintiff's performance as unsatisfactory and then circulated the rating slips to the superintendent. The teacher claimed the ratings were, inter alia, false, defamatory and malicious. Subsequently, one of the rating slips was published to the board of education resulting in the denial of a contract of permanent employment to plaintiff. The complaint further alleged that a public hearing was held, at the teacher's request, to review the basis of the

---

1. We will address the issue of immunity from suit although we are of the opinion that as an affirmative defense, it should be raised as such in new matter, in accordance with Pa.R.C.P. 1030. Plaintiffs have not objected to it being raised by preliminary objection. Nor will we.

board of education's decision not to renew his employment contract and, further, that the school district's legal officer prepared a report of the hearing which included the false statements concerning the teacher. By demurrer, the school district asserted that the activities of the school officials were statutory duties, peformed within the scope of their authority and in the exercise of governmental and administrative functions of the school district, and therefore absolutely privileged.

The Northumberland County Court began by noting the absolute privilege or complete immunity from liability in a defamation action has been accorded to certain government officials in the discharge of their duties. The rationale was explained in this way:

"The rationale for such protection is expressed in considerations of public policy: 'It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.' *Barr v. Matteo*, 360 U.S. 564, 571, 3 L.Ed. 2d 1434, 1441 (1958)." *Procopio*, supra, at 253.

The court then cited the leading Pennsylvania case, *Montgomery v. Philadelphia*, 392 Pa. 178, 140 A.2d 100 (1958), where the Supreme Court declined to establish any line of demarcation separating the offices which are protected by absolute privilege from those which are not, but did set forth guidelines to determine whether the positions and duties are such that the public interest requires the grant of absolute privileges. The court stated,

". . . the determination of whether a particular public officer is protected by absolute privilege should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Procopio*, supra, at 254.

We begin our analysis of whether defendants herein are protected by absolute privilege with reference to certain applicable school code sections. We pause to note, however, that it is unclear, based on the record before us, whether plaintiff was at the time of the evaluations a "temporary professional employee" or a "professional employee." Section 11-1101 of the school code defines theses terms:

"(1) The term 'professional employee' shall include those who are certified as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

. . . .

"(3) The term 'temporary professional employee' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employee whose services have been terminated by death, resignation, suspension or removal."[2] (footnote added).

Section 11-1108 requires the district superin-

2. As amended October 5, 1967, P.L. 348, §1; July 22, 1969 P.L. 172 §1; November 30, 1971, P.L. 356, 24 P.S. §11-1101.

tendent to notify each temporary professional employee, at least twice each year, of the professional quality, professional progress, and rating of his or her services. Pursuant to this section, no temporary professional employee shall be dismissed unless rated "unsatisfactory" and notice be thereafter given. The rating procedures used for both professional employees and temporary professional employees shall be in accordance with section 11-1123 which provides:

"In determining whether a professional employee shall be dismissed for incompetency, and in rating the services of a temporary professional employee, the professional employee or the temporary professional employee shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction . . . Rating shall be done by or under the supervision of the superintendent of schools or, if so directed by him, the same may be done by an assistant superintendent, a supervisor, or a principal, who has supervision over the work of the professional employee or temporary professional employe who is being rated: Provided, that no unsatisfactory rating shall be valid unless approved by the district superintendent."[3] (footnote added).

The provisions of the foregoing sections should be read against the backdrop of section 11-1106 which provides in pertinent part:

"The board of school directors in every school district shall employ the necessary qualified profes-

---

3. As amended January 14, 1970, P.L. (1969) 468, 24 P.S. §11-1108, effective July 1, 1970.

sional employees, substitutes and temporary profes-
sional employees in their respective districts in
compliance with the provisions of this act. . . ."

We see from these statutory sections, therefore,
that the school board has an obligation to employ
qualified professional employees as well as to inform
these employees of any professional deficiencies
which may jeopardize their present or future status
with the school district. We agree with the *Procopio*
court that the function of rating temporary profes-
sional employees, when performed by the proper
school officials as provided in the code, is of vital im-
portance to the goal of providing quality education.[4]
To hamper this process by allowing the continued
threat of defamation suits to exist would seriously
impede and undermine the legislature's purpose in
enacting the school code. In *Procopio*, the court
held:

"The overriding public interest present leads us to
hold that the school officials in the discharge of
their statutory duty to rate untenured teachers were
absolutely privileged. Further, the conveyance of
these ratings to the board of education is within the
scope of superintendent's duties, and therefore, he
was absolutely privileged in doing so."

We are persuaded by the *Procopio* decision and
believe it controls our disposition of the privilege/

---

4. See *Augustine v. Turkeyfoot Valley Area School Dis-
trict (No. 1)*, 9 D. & C. 3d 147, 167-176 (1977), where the
court, relying on various Pennsylvania appellate court cases,
held that anecdotal records must be maintained where an
"unsatisfactory" rating has been ascribed to the employee un-
der review. We believe this adequately responds to the alleged-
ly defamatory statements contained in defendant Monchak's
anecdotal records.

immunity issue raised by defendants. The Northwest Area School Board was legitimately performing an essential duty pursuant to the statutory requirements provided by the Pennsylvania Public School Code. We do not condone nor do we believe it necessary for a school official to either deliberately or negligently malign the reputation of a public school employee under the guise of performing a statutorily mandated evaluation. However, in the interest of promoting the free exercise of their duties unhampered by the threat of defamation suits, we believe the defendants are and should be protected by an absolute privilege.

In addition to the foregoing, it is important to note that hearings before a school board have been determined to be quasi-judicial in nature, providing, therefore, another basis to assert the defense of privilege. See *Augustine v. Turkeyfoot Valley Area School District (No. 1),* 9 D. & C. 3d 147 (1977) for an excellent discussion of the nature of a school board's function in the context of dismissal procedures for professional employees. The court, in *Procopio v. Shamokin Area School District,* supra, also notes in its opinion the quasi-judicial nature of the hearings before the school board.

Although we have accorded all defendants absolute privilege in the rating of plaintiff, Kenneth Malia, during the hearings, we separately address the statements allegedly made by defendants Saxe and Hardy because they were not made during the course of the hearing or as part of the evaluation proceedings. Section 566 of the Restatement (Second) of Torts provides guidance in resolving this issue. That section provides:

"A defamatory communication may consist of a

statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

The comments to section 566 explain the "pure" opinion/"mixed" opinion distinction which plaintiffs offer in their brief. The Pennsylvania Supreme Court specifically adopted section 566 in *Braig v. Field Communications,* 310 Pa. Super. 569, 456 A.2d 1366, 1372-73 (1983), also cited by plaintiffs in their brief. In the instant case, we consider the remarks as "pure" opinion and not, therefore, actionable, under the authority of both the Restatement and the *Braig* decision.[5] As comment (b) to section 566 provides:

"The simple expression of opinion, or the pure type, occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character . . . The opinion may be ostensibly in the form of a factual statement if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated.

"The pure type of expression of opinion may also occur when the maker of the comment does not himself express the alleged facts on which he bases the expression of opinion . . . The assumption of the facts may come about because someone else has stated them or because they were assumed by both

---

5. It is the second kind of expression of opinion, or the "mixed" type, which give rise to a cause of action in defamation.

parties as a result of their notoriety or otherwise."

Likewise, *Baker v. Lafayette College,* 350 Pa. Super. 68, 504 A.2d 247, 252 (1986), explains that statements of opinion without more are not actionable, ". . . for there can be no such thing as a false opinion in a free society." A libel action can be maintained, however, if plaintiff can demonstrate that the statement of opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. Id.

We cannot agree that the allegedly defamatory statements offered by defendant Saxe or defendant Hardy can be reasonably understoood to imply the existence of undisclosed facts. On the contrary, the statements were made immediately following a full hearing by the school board of which defendants Saxe and Hardy were participating members. All of the facts concerning plaintiff Kenneth Malia's job performance had been disclosed at the hearing. Therefore, we do not consider the statements uttered by defendants Saxe and Hardy as actionable opinion.

Lastly, defendants contend that plaintiff Deborah Malia has no cause of action under Pennsylvania Law because the alleged defamatory statements impute no misconduct as to her. Plaintiffs have not addressed this issue in their brief and so in accordance with Luzerne County Local Rule 270, plaintiffs are deemed not to oppose the matter and we will, therefore, dispose of the argument in accordance with law. Because we have concluded that the law will permit no recovery to plaintiff, Kenneth Malia, we are compelled likewise to dismiss Mrs. Malia's action.

Accordingly, we enter the following

426

## ORDER

The preliminary objections in the nature of a demurrer are sustained and the complaint is dismissed.