540 A.2d 595

Mary Goralski and Charles Goralski, her husband, Appellants *v.* P.L. Pizzimenti and Lakeland School District, Appellees.

Argued November 16, 1987, before Judges MAC-PHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Gerard J. Geiger*, with him, *Ronald J. Mishkin*, *Mervine, Brown, Newman, Williams and Mishkin, P.C.*, for appellants.

*Albert E. Nicholls, Jr., Hughes & Nicholls*, for appellee, P.L. Pizzimenti.

*John Krisa, Krisa & McDonough*, for appellee, Lakeland School District.

OPINION BY JUDGE DOYLE, April 5, 1988:

Mary Goralski and her husband (Appellants) appeal from an order of the Court of Common Pleas of Lackawanna County, which denied their motion to remove a compulsory nonsuit that the trial court had granted at

the close of Appellants' case-in-chief in their defamation action against the Lakeland School District (District) and P.L. Pizzimenti (Pizzimenti). We affirm.

· Mrs. Goralski is a certified home economics teacher, and from January, 1978 onward was on the District's substitute teacher list. During early 1980, Claimant applied twice to the Bureau of Employment Security[1] (Bureau) for unemployment benefits, which were granted on both occasions over the objection of the District. The District's defense in both cases was that Mrs. Goralski was frequently not available for work.

On May 23, 1980, Mrs. Goralski received a letter from P.L. Pizzimenti, the District's business manager, which read:

> Effective immediately your services as a substitute teacher with Lakeland School District are terminated, *due to misconduct,* and your name will be removed from the District's substitute teacher list. This is due to the fact that you have been called for work repeatedly and have not been available. Further, you were called on May 20, 1980, two times, and May 21, 1980, one time, and on May 22, 1980, one time. Each time there was either no answer or if there was an answer, you failed to return the call after being asked to do so.
>
> Also, on the evening of May 22, 1980, at 5:00 p.m., you called Mrs. Elaine King, a district secretary and you were very abusive toward her. (Emphasis added.)[2]

---

[1] Now the Office of Employment Security.

[2] This is the way Pizzimenti's letter to Mrs. Goralski appears in the trial court's opinion. Although this letter was admitted into evidence at the trial, Appellants have not included it in their reproduced record nor is it included in the joint facsimile record filed with this Court.

The letter indicated that a carbon copy had been sent to the Olyphant office of the Bureau.[3] After the letter had been sent, Mrs. Goralski again applied for unemployment benefits. Although benefits were initally denied by the Bureau, Mrs. Goralski prevailed before both a referee and the Unemployment Compensation Board of Review.

Appellant then timely commenced a defamation action against the District and Pizzimenti. Although the Appellees' motion for summary judgment was denied at the close of Appellants' case-in-chief, the court sustained their motion for the entry of a compulsory nonsuit.[4] This appeal followed.

In reviewing the validity of the entry of a compulsory nonsuit, a plaintiff must be given the benefit of every fact and reasonable inference arising from the evidence. *McKenzie v. Cost Brothers, Inc.,* 487 Pa. 303, 409 A.2d 362 (1979). All conflicts in the testimony must be resolved in plaintiff's favor and the entry of a compulsory nonsuit is only supportable in a clear case where the facts and circumstances have as the only conclusion the absence of liability. *Id.*

The plaintiff's burden of proof in a defamation case is contained in Section 8343(a) of the Judicial Code (Code), 42 Pa. C. S. §8343(a):

---

[3] The letter also indicated that carbon copies of the letter were sent to the following. Jackie Wass of R.E. Harrington Co.; T.J. O'Donnell, District Superintendent; R.D. Ghigiarelli, high school principal; J. Giles, school board secretary, Elaine Cine, District secretary; John Krisa, District Solicitor.

[4] The compulsory nonsuit was entered on five separate grounds by the trial court: (1) the alleged defamatory letter was not defamatory; (2) the Appellants did not prove publication; (3) the District and Pizzimenti were entitled to governmental and official immunity respectively; (4) Appellants could not have recovered for pain and suffering because they had not proven medical expenses above $1,500, *see* 42 Pa. C. S. §8553(c); and (5) Appellants could not claim ordinary losses for defamation and humiliation.

**Burden of Plaintiff**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa. C. S. §8343(a). *See also* Restatement (Second) of Torts §613 (1977).

The threshold question in a defamation action is whether the communication at issue is capable of a defamatory meaning. It is for the court in the first instance to make this determination; but, if the communication could be understood as defamatory, then it is for the jury to determine. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (1971). A libel is a maliciously written or printed publication which tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule or injure him in his business or profession. *Cosgrove Studio & Camera Shop, Inc. v. Pane,* 408 Pa. 314, 182 A.2d 751 (1962). A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Thomas Merton Center v. Rockwell International Corp.,* 497 Pa. 460, 442 A.2d 213 (1981), *cert. denied,* 457 U.S. 1134 (1982); Restatement (Second) of Torts §559 (1977). For the pur-

poses of determining whether a communication could be understood as defamatory, it is not necessary for the communication to have actually caused harm to reputation; defamatory character depends on the general tendency of the words to have such an effect. *Corabi; Miller v. Hubbard,* 205 Pa. Superior Ct. 111, 207 A.2d 913 (1965). It is not sufficient, however, if the words are merely annoying or embarrassing to plaintiff. *Beckman v. Dunn,* 276 Pa. Superior Ct. 527, 419 A.2d 583 (1980).

The Court must also read the allegedly defamatory matter in context. *Corabi.* The nature of the audience seeing or hearing the remarks is also a critical factor in determining whether the communication is capable of a defamatory meaning. *Baker v. Lafayette College,* 350 Pa. Superior Ct. 68, 504 A.2d 247 (1986), *aff'd,* 516 Pa. 291, 532 A.2d 399 (1987); *Beckman.* The true test is the effect the allegedly libelous communication is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. *Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 188 A. 203 (1936). The words must be given by judges and juries the same significance that other people are likely to attribute to them. *Id.* Nevertheless, neither the mere susceptibility of the allegedly defamatory publication to an innocuous interpretation nor the intention of the author conclusively defeats an action for defamation. *Brophy v. Philadelphia Newspapers, Inc.,* 281 Pa. Superior Ct. 588, 422 A.2d 625 (1980).

Appellants assert that the term misconduct, as used in Pizzimenti's letter to Mrs. Goralski, is susceptible to a defamatory interpretation. They point to the dictionary definition of misconduct which can mean mismanagement, intentional wrongdoing, deliberate violation of a rule of law or standard of behavior, malfeasance, bad

conduct or improper behavior.[5] While the term "misconduct" could possibly be defamatory when considered in the abstract, we hold, as did the trial court, that the use of the term misconduct here was mere opinion and we quote with approval the conclusion of Judge JAMES J. WALSH, the trial judge:

> In the case at bar, the alleged defamatory statements were made in the context of an employment relationship by Defendant Pizzimenti, who can be considered Plaintiff's supervisor. The letter was written as a result of an evaluation of Plaintiff's work performance, intended for communication to only a few members of the Defendant School District and Bureau of Employment Security.
>
> In our opinion, the letter in question could not, as a matter of law, have a defamatory meaning. Therefore, the phrase in the letter complained of is not actionable under Pennsylvania law. Such an evaluation of Plaintiff's job performance *might* be embarrassing or annoying to Plaintiff, however, in our judgment, it did not lead the community to ostracize or shun Plaintiff. The letter was a result of incidents of employment that necessarily included statements akin to opinion and opinion without more, is not actionable.

(Citations omitted.)

In *Braig v. Field Communications,* 310 Pa. Superior Ct. 569, 456 A.2d 1366 (1983), *cert. denied,* 466 U.S. 970 (1984), the Superior Court adopted the test articulated in Section 566 of the Restatement (Second) of Torts (1977), which states "[a] defamatory communication may consist of a statement in the form of an opin-

---

[5] Webster's Third New International Dictionary 1443 (1986).

ion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." The rationale behind the Restatement position was succinctly summarized by the Third Circuit in *Redco Corp. v. CBS, Inc.,* 758 F.2d 970 (3rd Cir. 1985), *cert. denied,* 474 U.S. 843 (1985), where it explained:

> Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject on the basis of an independent evaluation of the facts. However, if the opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion.

*Id.* at 972. And, the question of whether a challenged publication is fact or opinion is one of law for the Court to make. *Braig.*

Applying the *Braig* test to the present case, Pizzimenti's letter clearly lays out the facts that he thinks constitute misconduct. The letter did not imply the existence of any undisclosed facts, nor anything beyond his opinion that Mrs. Goralski's failure to return the District's calls and her conduct towards Mrs. King constituted misconduct. The trial court was correct in granting a nonsuit, as the alleged defamation constituted nonactionable opinion. *Beckman.*[6]

---

[6] At oral argument of this case, Appellants raised the argument that the term misconduct was used in the letter so that the Bureau would deny Mrs. Goralski unemployment benefits under Section 402(e) of the Unemployment Compensation Law (willful misconduct), Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). While this theory is nov-

Next, we turn to the issues of governmental and official immunity. It is abundantly clear that Appellants' defamation action falls within none of the eight enumerated exceptions contained in Section 202(b) of the Political Subdivision Tort Claims Act (Act).[7] *See Thorpe v. Danby,* 68 Pa. Commonwealth Ct. 138, 448 A.2d 676 (1982). Thus, the trial court's sustaining of the District's motion for a compulsory nonsuit on the grounds of governmental immunity was also proper.

The Act also contained provisions dealing with the subject of official immunity. Section 301 of the Act, 53 P.S. §5311.301,[8] provided that "[a]n employee of a political subdivision is liable for civil damages on account of any injury to a person or property caused by his acts or omissions only to the same extent as his employing political subdivision and subject to the limitations imposed by this chapter." The protection afforded by the official immunity provisions of the Act, however, was restricted by Section 307 as follows:

> In any action against a political subdivision or an employee thereof for damages on account of an injury caused by the act or omission of the employee in which it is judicially determined that the act or omission of the employee caused the injury and that such act or omission constituted

---

el, a review of the record indicates that this was not the theory of Appellants' case in the trial court. Consequently, this theory of relief is waived. *See Rhoads v. Lancaster Parking Authority,* 103 Pa. Commonwealth Ct. 303, 520 A.2d 122 (1987), *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987). In any event, there was insufficient evidence to present the case to the jury on this theory.

[7] Act of November 26, 1978, P.L. 1399, *as amended,* formerly 53 P.S. §5311.202(b), *repealed by* Section 333 of the Act of October 5, 1980, P.L. 693. A similar provision is now found in 42 Pa. C. S. §8542(b).

[8] A similar provision is now found in 42 Pa. C. S. §8545.

a crime, actual fraud, actual malice or willful misconduct, the provisions of Section 302 (relating to defense of official immunity), 304 (relating to indemnity) and 306 (relating to limitation of damages) shall not apply.

formerly 53 P.S. §5311.307.[9]

Appellants raise two arguments as to why Pizzimenti should not be protected by official immunity. First, they claim that Pizzimenti acted outside his scope of duties when he sent the May 23, 1980 letter to Mrs. Goralski. Appellants seize upon a portion of the trial court's opinion where it stated that "[t]he letter in question was made as a result of an evaluation of Plaintiff's performances at work." Appellants argue that only the District Superintendent and the school principal could evaluate Mrs. Goralski's classroom performance.

While Pizzimenti may not have had the authority to evaluate Mrs. Goralski's classroom performance, his May 23, 1980 letter does not in any way criticize her classroom performance. Mr. Pizzimenti was in charge of the substitute teacher list for the District, and, thus, all the matters complained of in his May 23, 1980 letter fell within the scope of his duties.

Second, Appellants contend that Pizzimenti's writing of the letter was motivated by actual malice or willful misconduct. The letter was written, they assert, in order to terminate Mrs. Goralski's unemployment benefits. Actual malice in this context requires that the defamatory publication was made with knowledge of its falsity or a reckless disregard of whether it was false or not. *Thorpe; see also Hepps v. Philadelphia Newspapers, Inc.*, 506 Pa. 304, 485 A.2d 374 (1984), *rev'd on other grounds,* 475 U.S. 767 (1986).

We find this argument to be lacking in merit. This case was tried in the trial court on the theory that the

---

[9] A similar provision is now found in 42 Pa. C. S. §8550.

word "misconduct" implied something beyond the matter stated in the letter, therefore darkening Mrs. Goralski's reputation with the Bureau, and not on the theory that the use of this word was part of a scheme to deny Mrs. Goralski benefits. This issue is thus waived. *See Richardson v. LaBuz*, 81 Pa. Commonwealth Ct. 436, 446 n.5, 474 A.2d 1181, 1190 n.5 (1984). In any event, there is no evidence to show that Pizzimenti wrote the letter with actual malice. The mere fact that Mrs. Goralski prevailed on her unemployment compensation claim does not establish that the matters stated in the letter were false or known to be false. Indeed, Mrs. Goralski admitted having a conversation with Mrs. King at the time and date stated in the letter. Further, Mrs. Goralski never denied that she was either not home or failed to return telephone calls on the dates mentioned in the letter. Additionally, there is no evidence that the unemployment compensation authorities found these specific allegations to be false. At best, Appellants' evidence on this issue is purely speculative, a basis upon which a jury may not reach a verdict. *Smith v. Bell Telephone Co., of Pennsylvania*, 397 Pa. 134, 153 A.2d 477 (1959). Since we do not find that Pizzimenti's conduct constituted actual malice or willful misconduct, Section 307 of the Act is inapplicable, and Pizzimenti, like the District, is immune from suit. *Thorpe.*

Given our disposition of these two issues, we do not reach the issue of publication or the other grounds relied upon by the trial court for granting the nonsuit.

Affirmed.

## ORDER

Now, April 5, 1988, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.