Pamela HABE, Plaintiff,

v.

FORT CHERRY SCHOOL DISTRICT, John Manion, Richard White, Claire McCracken, Ray McConaghy, Jane Phillis, Ray Miller, Blair Brant and Jeffrey Marquis, Defendants.

Civ. A. No. 88–661.

United States District Court, W.D. Pennsylvania.

March 20, 1992.

Peter M. Suwak, Washington, Pa., for plaintiff.

Robert L. McTiernan, Bryan B. Campbell, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

LEWIS, District Judge.

Plaintiff Pamela Habe became a substitute cook with defendant Fort Cherry School District (the "school district") in April, 1986. In 1987, her son, who was in first grade, began experiencing difficulty in school. Mrs. Habe appeared at a public meeting of the Fort Cherry School Board on March 23, 1987, to complain about the lack of a remedial reading teacher at her son's elementary school. Mrs. Habe also sought an audit of school board activities to investigate the school district's use of remedial reading funds. Thereafter, Mrs. Habe contends, the number of hours of work she received as a substitute cook declined drastically.

Also thereafter, at a school board meeting on April 27, 1987, Mrs. Habe inquired about the decline in work she was experiencing. She alleges that school superintendent John Manion responded, "Mrs. Habe, your work record is no good."

Plaintiff sues the school district, the school superintendent, her supervisor and six members of the school board. Her amended complaint contains the following claims asserted against all defendants: (1) a claim pursuant to 42 U.S.C. § 1983 for "*de facto* constructive discharge" in retaliation for exercise of her First Amendment rights; (2) a claim pursuant to 42 U.S.C. § 1983 for deprivation of a property or liberty interest without due process; (3) wrongful discharge; (4) intentional infliction of emotional distress; and (5) intentional interference with economic opportu-

nities. In addition, plaintiff asserts a defamation claim against defendant Manion.

Pending before this court is a motion for summary judgment filed on behalf of all the defendants.[1] Defendants' motion will be granted in part and denied in part.

## I. *Summary Judgment Standard*

This court may enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Féd.R.Civ.P. 56(c). The substantive law will determine which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the context of a motion for summary judgment, the moving party bears the burden of demonstrating that the evidence creates no genuine issue of material fact regardless of which party would have the burden of proof at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987) (*en banc*). If, however, the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the nonmoving party has failed to provide evidence sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the nonmoving party. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

## II. *Section 1983 Due Process Claims*

Although asserted together in Count 1 of her amended complaint, plaintiff alleges two § 1983 claims: one implicating her First Amendment rights and one implicating her right to procedural due process before being deprived of property or liberty. Plaintiff's clam of deprivation of property must fail.

■ To have a property interest in a benefit, a person must have more than an abstract need or a unilateral expectation of that benefit. He or she must have a legitimate claim of entitlement to it. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). State law determines whether he or she has a legitimate claim of entitlement (i.e., whether a property interest exists). *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 539, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Brown v. Trench*, 787 F.2d 167, 170 (3d Cir.1986).

■ In Pennsylvania, public employees generally have at-will positions. *Brown*, 787 F.2d at 179; *Handley v. Phillips*, 715 F.Supp. 657, 670 (M.D.Pa.1989). Although practice and mutual understanding may establish entitlement in some situations (*see Stana v. School District of City of Pittsburgh*, 775 F.2d 122 (3d Cir.1985)), plaintiff has alleged nothing so definite as to provide her with more than a unilateral expectation of being called in to work as a substitute cook with the school district. She had no entitlement to her job implicating the due process clause of the Constitution. Therefore, the court will grant defendant's motion for summary judgment as to plaintiff's claim regarding deprivation of property without due process.

■ Plaintiff may assert a claim of deprivation of liberty without due process of law without having a corresponding property interest, however. A claim for deprivation of liberty without due process exists when "the state, in terminating an individual's employment, makes charges against him that will seriously impair his ability to take advantage of other employment opportunities." *Huntley v. Community School Board of Brooklyn*, 543 F.2d

---

**1.** Defendants also filed motions to dismiss the complaint and the amended complaint. All of the arguments asserted by defendants at the preliminary motions stage were reasserted and briefed by both parties at the summary judg-

ment stage. Therefore, by addressing defendants' motion for summary judgment, the court addresses all pending dispositive motions in this case.

979 (2d Cir.1976). Plaintiff has alleged claims of defamation and other factual matters which may implicate such concerns. Defendants' motion for summary judgment will be denied with regard to the liberty interest and the First Amendment prongs of plaintiff's § 1983 claims.

### III. *Wrongful Discharge Claim*

█ In Count 2, plaintiff asserts a wrongful discharge claim. Under Pennsylvania law, employment relationships are generally at will. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). *Cf. Brown,* 787 F.2d at 179. Plaintiff may, however, assert a wrongful discharge claim if she can show that her employer dismissed her in violation of a " 'clear mandate of public policy' embodied in a constitutionally or legislatively established prohibition, requirement or privilege." *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1344 (3d Cir.1990). Allegations that an employer discharged an employee in retaliation for exercising her constitutional rights come within this public policy exception to the employment-at-will doctrine. *Id.; Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983). Plaintiff's wrongful discharge claim will remain in the case.

### IV. *Defamation Claim*

In Count 3, plaintiff asserts a defamation claim against defendant Manion. Defendant Manion attacks this claim on four legal grounds, but none of those grounds justify the entry of summary judgment.

#### A. Actionable Opinion

█ First, defendant argues that the statement made by defendant Manion constituted an opinion made in the context of an employment relationship and thus is not actionable because it cannot have a defamatory meaning as a matter of law.

Under Pennsylvania law, the plaintiff in a defamation case bears the burden of proving, *inter alia,* that the statement at issue is of "defamatory character." 42 Pa. C.S.A. § 8343(a) (Purdon's 1982). The threshold question in any defamation case

is whether the communication at issue is capable of a defamatory meaning. *Goralski v. Pizzimenti,* 115 Pa.Commw. 210, 540 A.2d 595, 597 (1988). The court must make the initial determination on this issue, but the issue should be left to the jury if the communication at issue could be understood as defamatory. *Id.; Dougherty v. Boyertown Times,* 377 Pa.Super. 462, 547 A.2d 778, 782 (1988). A statement is defamatory "if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Goralski,* 540 A.2d at 597–98. Whether the plaintiff suffered actual harm stemming from the statement is immaterial, but a statement which is merely annoying or embarrassing to plaintiff is not defamatory. *Id.* at 598.

In determining whether a statement is capable of defamatory meaning, the court should first determine whether the statement at issue constitutes fact or opinion because only certain types of opinions are actionable. *See* Section 566 of the Restatement (Second) of Torts. Defendant Manion's statement—"After all, Mrs. Habe, your work record is no good"—may indeed have constituted an opinion. That does not mean it is not actionable, however. Rather, an opinion is still actionable if the statement at issue reasonably may be understood to imply the existence of undisclosed defamatory facts justifying the opinion. *Dougherty,* 547 A.2d at 785.

In *Goralski,* the court determined that an opinion was not capable of defamatory meaning because the letter at issue clearly laid out the facts which formed the basis for the expressed opinion. *Goralski,* 540 A.2d at 599. Because it did so, the letter did not imply that other, undisclosed, facts supported the opinion expressed in it. When a bald expression of opinion such as defendant Manion's is at issue, however, the implication that undisclosed defamatory facts support the opinion makes the expression of opinion actionable.

#### B. High Official Immunity

█ Defendant Manion next claims that he is absolutely privileged from liability for

his statement because he is a "high public official" and the statement at issue was made in the course of exercising his duties or powers. As noted above, defendant Manion is the superintendent of the Fort Cherry School District.

It is true that, under Pennsylvania law, high public officials are absolutely privileged when making statement in the course of exercising their duties. *Montgomery v. City of Philadelphia*, 392 Pa. 178, 140 A.2d 100, 103 (1958). The court should consider the nature of the individual's duties and the importance of his or her office when determining whether he or she is a high public official. *Id.* 140 A.2d at 105. In addition, most importantly, the court should consider whether the individual has policy-making functions. *Id.*

Defendant cites the court to a case decided by the Cumberland County Court of Common Pleas in which a school superintendent was held to be a high public official and thus absolutely immune from defamation claims for statements made within the scope of their authority. *Steffen v. Mainello*, 26 Cumb. 319 (1976). Noting that section 1081 of the Pennsylvania Public School Code, 24 P.S. § 10–1081 (Purdon's Supp.1991), gives school superintendents the power to direct "the art and methods of teaching" as they deem "expedient and necessary," the court ruled that superintendents possess important, although limited, policy-making functions. *Id.* at 323. Although their actions affect relatively few people, superintendents govern the course of education in their districts, which is a matter of great societal interest.

In *Steffen*, however, the allegedly defamatory communications at issue formed the basis for incompetency charges filed against the plaintiff, who was a teacher in the school district. *Id.* at 320. Looking to the purposes underlying the grant of absolute privileges to high public officials, the court ruled that the ability to make statements regarding teachers' competency was central to carrying out a superintendent's duties. *Id.* at 324. Absolute immunity is necessary to avoid squelching a superintendent's candor and forthrightness on such matters. It would be detrimental to the entire school system if the superintendent were reluctant to advise the school board or other responsible officials that he believed a teacher to be incompetent.

In contrast, the statements at issue in this case arose in an entirely different manner and concern entirely different matters. There is less reason to grant high official immunity to defendant Manion in this case. Despite the Court of Common Pleas' holding in *Steffen*, the court does not believe that the Pennsylvania Supreme Court would hold that Manion was absolutely privileged in this case.

In addition, Pennsylvania courts have sometimes distinguished Commonwealth officers (or officials) from mere employees as follows:

> Commonwealth Court distinguished Commonwealth officers from ordinary Commonwealth employees, *describing officers as those persons to whom are delegated some of the sovereign functions of government, and employees as persons who merely exercise subordinate ministerial functions.* More recently, the definition of 'officer' ... has been refined to include *'those persons who perform state-wide policymaking functions and who are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government.'*

*Rok v. Flaherty*, 106 Pa.Commw. 570, 527 A.2d 211, 213 (1987), *quoting Balshy v. Rank*, 507 Pa. 384, 490 A.2d 415 (1985) (citation omitted and emphasis added in *Rok*). Applying this test in the present context supports the denial of defendant's motion on this ground.

## C. Absence of Malice and Consent

■ Finally, defendant contends that plaintiff cannot establish the requisite mental state for recovery for defamation and that plaintiff cannot recover for defamation because she consented to defendant Manion's making the statement at issue by initiating a discussion regarding her employment with the school district. These allegations present contested issues of fact

which the court will not address at the summary judgment stage.

## V. Intentional Infliction of Emotional Distress Claim

In Count 4, plaintiff asserts an intentional infliction of emotional distress claim. Defendants argue that plaintiff cannot recover on this claim as a matter of law. Because plaintiff has alleged little more than facts which might be present in any wrongful discharge or discriminatory discharge case, the court agrees. Defendants' motion will be granted as to plaintiff's claim of intentional infliction of emotional distress.

Taking all of plaintiff's allegations as true, and allowing plaintiff all reasonable inferences from the evidence presented, plaintiff alleges that defendants intentionally inflicted emotional distress upon her by reducing and then terminating her work with the school district in retaliation for her criticism of the defendants. At the next school board meeting, plaintiff voiced her belief that she was being frozen out of her position in retaliation for her actions. In response, at the meeting, defendant Manion stated that her work record was "no good." *See* plaintiff's brief in opposition to motion for summary judgment, pp. 17–18. Such factual allegations do not rise to the level of an intentional infliction claim.

Pennsylvania courts have interpreted the tort of intentional infliction of emotional distress cautiously. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990). Because the tort is so amorphous, Pennsylvania courts require that a plaintiff must support his or her claim of alleged emotional distress by competent medical evidence. In other words, plaintiffs must seek medical treatment for their emotional distress in order to recover for this tort. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 995 (1987). To recover, the plaintiff must also demonstrate that the conduct at issue is extreme or clearly outrageous. *Andrews*, 895 F.2d at 1488–87. *See also Cox v. Keystone Car-*

*bon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (conduct must be so outrageous in character and so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society).

The United States Court of Appeals for the Third Circuit has instructed that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox*, 861 F.2d at 395. In fact, "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.*

In *Cox*, for example, plaintiff asserted a claim of intentional infliction of emotional distress after he underwent triple bypass surgery, was fired on the very day he returned to work on a part-time trial basis, and then encountered opposition from his ex-employer when he applied for disability and medical insurance benefits. The United States Court of Appeals for the Third Circuit affirmed the district court's directing a verdict against plaintiff.

In *Andrews*, plaintiffs, two female members of the Philadelphia police department, alleged sexual harassment on the part of the police department and certain individual defendants. Plaintiffs alleged that defendants subjected them to abusive language, destroyed their property and some of their work product, made anonymous telephone calls to their homes, posted pornographic pictures in plain view of their desks, watched pornographic movies in the squad room and even physically injured one of the plaintiffs by placing a lime substance in her shirt. *Andrews*, 895 F.2d at 1471–75. The appellate court affirmed the district court's holding that defendants' actions did not rise to the level of outrageousness required under Pennsylvania law. *Id.* at 1487.[2]

2. The court did so with some reservation, noting    that some of the actions alleged might form a

The cases cited by plaintiff as presenting factual scenarios similar to that at issue all pre-dated the Third Circuit's decisions in *Cox* and *Andrews*, thus calling into question their continuing validity. In light of more recent Third Circuit precedent, the court will disregard them.

After all, if cases such as *Cox* and *Andrews* do not as a matter of law present scenarios outrageous enough to result in recovery for intentional infliction of emotional distress, the case before this court certainly does not. Defendants' reducing plaintiff's hours and defendant Manion's single allegedly derogatory statement concerning plaintiff do not constitute outrageous conduct within the meaning of the tort of intentional infliction of emotional distress. *See Gordon v. Lancaster Osteopathic Hospital Ass'n, Inc.*, 340 Pa.Super. 253, 489 A.2d 1364 (1985) (publication of "letters of no confidence" does not constitute outrageous conduct). Plaintiff's intentional infliction of emotional distress claim cannot withstand defendants' motion for summary judgment.

## VI. *Intentional Interference with Employment Opportunities Claim*

■ In Count 5 of her amended complaint, plaintiff alleges that defendants' actions "served to deny her the opportunity to seek other economic opportunities" and that defendant Manion's statements have "served to inhibit opportunity for other employment possibilities." Amended Complaint, ¶ 30. Thus, plaintiff alleges that defendants have intentionally interfered with her economic opportunities.

There is no tort named "intentional interference with economic opportunities" under Pennsylvania law. Both plaintiff and defendants apparently agree that what plaintiff asserts in Count 5 is a claim for intentional interference with prospective contractual relations, as outlined in Section 766B of the Restatement (Second) of Torts. *Thomas Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971).

Under Pennsylvania law, in order to recover on a claim of intentional interference with prospective contractual relations, plaintiff must prove the following elements:

(a) that a prospective contractual relation existed;

(b) that the defendant intended to harm the plaintiff by preventing the relation from occurring;

(c) that the defendant acted improperly (or without privilege or justification) in doing so; and

(d) that the defendant caused actual damage to the plaintiff.

*Thomas Coal*, 412 A.2d at 471; *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978). *See also Green v. Interstate United Mgt. Services Corp.*, 748 F.2d 827 (3d Cir.1984).

Plaintiff alleges that she was unable to obtain other employment during the 1986–87 school year because she had to remain available in case defendants called her to work, even though defendants were reducing the number of hours she was working. She further alleges that defendant Manion's statement regarding the quality of her work inhibited her ability to obtain other employment.

Although claims such as plaintiff's involve *prospective* contractual relations, and thus are arguably inherently speculative, Pennsylvania courts require some degree of certainty before permitting recovery. Before plaintiff may recover for intentional interference with prospective contractual relations, she must prove "that but for the wrongful acts of the defendants it is reasonably probable that a contract would have been entered." *SHV Coal, Inc. v. Continental Grain Co.*, 376 Pa.Super. 241, 545 A.2d 917, 921 (1988), *rev'd on other grounds, SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702 (1991).

basis for the tort. It nevertheless affirmed because of a lack of proof tying the defendants to the actions alleged. That the court even considered that such conduct might not be outrageous enough to state a claim is in itself instructive, however.

Plaintiff asserts that her evidence proves this. In the only case she cites on this issue, however, the plaintiff identified a contractual relationship with which he claimed defendants interfered. *See Gordon,* 489 A.2d at 1370. In this case, plaintiff has advanced no evidence that she could have obtained other employment while still "on call" with the defendant school district, or that she ever unsuccessfully applied to another school or tried to obtain other employment which she was unable to obtain because of defendants' remarks. To the contrary, the only evidence on record regarding any attempt by plaintiff to obtain other employment indicates that plaintiff applied at Washington Hospital, got a job and began working there in June, 1988. Defendants' motion for summary judgment as to this claim will be granted.

## VII. *Punitive Damages*

██ Finally, defendants seek to have plaintiff's requests for punitive damages stricken from the case. In response, plaintiff concedes that she cannot recover punitive damages from the defendant school district. She asserts that the individual defendants may still be liable for punitive damages, however.

Under Pennsylvania law, punitive damages are available when the acts alleged are done in bad faith, with a bad motive, willfully, maliciously, wantonly, recklessly or oppressively. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1263 (1983), *modified on other grounds, Briggs v. Erie Insurance Group,* 406 Pa.Super. 560, 594 A.2d 761 (1991).

The court will not determine at this stage whether the evidence which might be presented at trial might convince a jury that defendants acted in such a manner. Rather, the court will deny defendants' motion as to plaintiff's punitive damages claims.

## VIII. *Conclusion*

In summary, then, defendants' motion for summary judgment is granted in part and denied in part. Remaining for trial against all defendants are a § 1983 claim for retaliation for exercising First Amendment rights, a § 1983 claim for deprivation of liberty without due process of law, and a wrongful discharge claim. In addition, plaintiff's defamation claim against defendant Manion remains in the case, as do plaintiff's requests for punitive damages on all counts remaining against the individual defendants.