## Schrank v. Borough of Moosic

C.P. of Lackawanna County, no. 95 CV 3249.

*Lawrence A. Durkin* and *Dawn M. Guzzi,* for plaintiffs.

*Daniel T. Brier* and *Donna A. Walsh,* for defendants.

MINORA, *J.,* February 7, 2000—

## I. INTRODUCTION AND BACKGROUND

On or about July 10, 1995, this action was commenced through the filing of a writ of summons. A seven-count complaint was filed on February 20, 1996 alleging various claims for slander, negligence, fraud, wrongful termination and loss of consortium. Defendants filed preliminary objections on March 11, 1996 and the Schranks filed a seven-count amended complaint on April 9, 1996.

Count I of the amended complaint alleges that councilpersons Dolores Zurek, Robert Gronski, Maryann Nawrocki and Germaine Helcoski made slanderous statements concerning Mr. Schrank during the January 4, 1994 official borough council meeting. (Amended complaint ¶¶42-45.) Count II purports to state a cause of action for slander against Moosic Borough for the same alleged statements under the doctrine of respondeat superior. (*Id.* ¶¶46-48.) In Count III, Mr. Schrank alleges that former Mayor William McDonough, the mayor of Moosic Borough on January 4, 1994, was negligent and acted fraudulently in purportedly removing his name from the list of officers submitted to council on January 4, 1994. (*Id.* ¶¶49-53.) Count IV purports to state a claim for unlawful termination. (*Id.* ¶¶52-55.) Finally, Barbara Schrank alleges derivative claims for loss of consortium against the councilpersons, Moosic Borough and Mayor McDonough in Counts V through VII, respectively. (*Id.* ¶¶56-64.)

Defendants again filed a second set of preliminary objections on April 29, 1996, which were granted in part and denied in part on July 25, 1996.

Specifically, the court sustained, in part, defendants' demurrer to Count I of the amended complaint and dismissed that count as it relates to councilpersons Nawrocki and Helcoski.

Extensive pretrial discovery including deposition testimony was elicited. On May 14, 1999, the defendants filed this instant motion for summary judgment and a brief in support thereof. On June 16, 1999, plaintiffs filed an answer to defendants' motion for summary judgment and a brief in opposition thereto. Oral argument was conducted on November 16, 1999, rendering this matter ripe for disposition.

## II. STATEMENT OF LEGAL DEFENSES AND ISSUES RAISED IN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defense names the following legal defenses in support of its motion for summary judgment:

(1) The doctrine of absolute privilege accorded high public officials entitles a high public servant to absolute immunity for statements made within the scope of his official duties during an official meeting;

(2) The Pennsylvania Political Subdivision Tort Claims Act affords a municipality absolute immunity from a suit for defamation;

(3) A local agency official is immune from liability under the Pennsylvania Political Subdivision Tort Claims Act for the alleged negligent failure to satisfactorily perform his official duties;

(4) Plaintiff fails, as a matter of law, to state a claim for fraud where he does not allege that the defendant

made a false representation upon which he relied to his detriment;

(5) Plaintiff fails, as a matter of law, to state a claim for wrongful discharge where he was at all times an at-will employee subject to summary dismissal and where there is no alleged violation of public policy; and

(6) A spouse fails, as a matter of law, to state a claim for loss of consortium where defendants cannot be held liable to the claimant's spouse.

We will deal with the legal defenses/issues in order unless one is dispositive of the instant matter.

## III. THE STANDARD FOR SUMMARY JUDGMENT

Before addressing the six specific issues mentioned above, we must first set forth the standards for summary judgment.

Rule 1035.2 of the Pennsylvania Rules of Civil Procedure sets forth two bases for the entry of summary judgment. The rule provides in pertinent part:

"After the relevant pleadings are closed, but within such time as to not reasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to

the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

A party may move for summary judgment after pleadings are closed in two situations. First, when there is no genuine issue of material fact that could be established by additional discovery, and second, after discovery, if an adverse party bearing the burden of proof has failed to produce evidence of essential facts so as to warrant the submission of the issue to a jury. Pa.R.C.P. 1035.2; *Fazio v. Fegley Oil Co. Inc.,* 714 A.2d 510, 512 (Pa. Commw. 1998). Further, under the revised rules, a court may grant summary judgment where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Boyer v. Walker,* 714 A.2d 458, 459 (Pa. Super. 1998); *Cappelli v. York Operating Co. Inc.,* 711 A.2d 481, 483 (Pa. Super. 1998) (en banc). When making this determination, the trial court must consider the evidence in a light most favorable to the non-moving party. Pa.R.C.P. 1035.1-1035.4; *Harman v. Borah,* 720 A.2d 1058, 1061 (Pa. Super. 1998); *Sebelin v. Yamaha Motor Corp. USA,* 705 A.2d 904, 907 (Pa. Super. 1998).

Rule 1035.3(a) requires that the adverse party file a response setting forth the facts in dispute within 30 days after the service of the motion for summary judgment. Pa.R.C.P. 1035.3(a); *Henninger v. State Farm Insurance Co.,* 719 A.2d 1074, 1076 (Pa. Super. 1998); *Stilp v. Hafer,* 701 A.2d 1387, 1390 (Pa. Commw. 1997). Where a motion for summary judgment has been properly supported with corroborating documentation, the adverse party must demonstrate by specific facts contained within their depositions, answers to interrogatories, admissions

or affidavits that there is a genuine issue of material fact for trial. *Sovich v. Shaughnessy,* 705 A.2d 942, 944 (Pa. Commw. 1998), citing *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991).

## IV. DOES THE DOCTRINE OF ABSOLUTE PRIVILEGE ACCORDED HIGH PUBLIC OFFICIALS ENTITLE A HIGH PUBLIC SERVANT (*I.E.,* COUNCILPERSON) TO ABSOLUTE IMMUNITY FOR STATEMENTS MADE WITHIN THE SCOPE OF THEIR OFFICIAL DUTIES DURING AN OFFICIAL MEETING?

With the above background in mind, it is now time to examine the individual issues raised by the defendants beginning with the doctrine of absolute immunity as it applies to individual councilpersons.

Our Supreme Court has recently upheld the doctrine of absolute immunity afforded high public officials in *Linder v. Mollan,* 544 Pa. 487, 677 A.2d 1194 (1996). The *Linder* court rejected the contention that the Pennsylvania Political Subdivision Torts Claims Act, 42 Pa.C.S. §8550, abrogates the long-standing common-law doctrine of absolute privilege for high public officials and noted that "[t]his court has never called into question, much less overruled, the common-law doctrine of absolute privilege for high public officials." *Linder,* 544 Pa. at 492, 677 A.2d at 1196. With regard to this doctrine, the *Linder* court found, in that case, a mayor clearly qualified as a high public official since he routinely made significant public policy decisions and was accountable to the voting public. *Linder,* 544 Pa. at 497, 677 A.2d at

1199. Since the alleged defamatory remarks were within the scope of his statutory authority over fiscal affairs in the borough, the mayor was held absolutely immune from suit for libel and slander. *Linder,* 544 Pa. at 497-98, 677 A.2d at 1199.

Under similar circumstances, township supervisors were held immune from suit for alleged defamatory statements made during a meeting of the board of supervisors regarding a township police officer. *Zdaniewicz v. Sands,* 288 Pa. Super. 420, 432 A.2d 231 (1981).

Also, our Commonwealth Court in *Suppan v. Kratzer,* 660 A.2d 226 (Pa. Commw. 1995), *appeal denied,* 546 Pa. 659, 684 A.2d 560 (1996), held that the mayor and borough council president were high public officials entitled to the absolute privilege and that alleged defamatory comments made in connection with a plaintiff's application for a police officer's position were within the scope of their authority as borough officials. *Suppan* at 230-31. Using the above cases as a guide, this court concludes that the councilpersons in this present case were high public officials entitled to the benefit of absolute privilege because the true test of whether a public official is protected "should depend upon the nature of his duties, the importance of his office, and particularly whether he has policy-making functions." *Montgomery v. Philadelphia,* 392 Pa. 178, 186, 140 A.2d 100, 105 (1958).

Certainly, members of borough council routinely make policy decisions affecting the public and are accountable to the voting public. They certainly do wield the legislative and fiscal powers of municipality, including

the power to appoint and remove police officers, and exercise important policy-making functions. See 53 P.S. §§46005-46006. Accordingly, councilpersons certainly do meet the test of what constitutes a high public official protected by the absolute privilege.

Other examples of high public officials include:

(1) Mayor. *Linder, supra.*

(2) Pennsylvania Attorney General. *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952).

(3) Pennsylvania Secretary of Transportation. *Fischer v. Kassab,* 25 Pa. Commw. 593, 360 A.2d 809 (1976).

(4) Borough council president. *Suppan, supra.*

(5) Township supervisor. *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968).

(6) County attorney. *Mosley v. Observer Publishing Co.,* 422 Pa. Super. 255, 619 A.2d 343 (1993).

(7) District attorney and assistant district attorney. *Freach v. Commonwealth,* 23 Pa. Commw. 546, 354 A.2d 908 (1976), *aff'd in part,* 471 Pa. 558, 370 A.2d 1163 (1977); *McCormick v. Specter,* 220 Pa. Super. 19, 275 A.2d 688 (1971).

(8) Revenue commissioners of Philadelphia. *Factor v. Goode,* 149 Pa. Commw. 81, 612 A.2d 591 (1992), *appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993).

(9) Deputy commissioner of public property of Philadelphia. *Montgomery, supra.*

(10) School superintendent. *Petula v. Mellody,* 158 Pa. Commw. 212, 631 A.2d 762 (1993).

(11) Individual school board directors. *Jane Doe v. East Stroudsburg Area School District,* civil action no. 3:96 CV 852, Federal Court for the Middle District of Pennsylvania; Judge A. Richard Caputo applying Pennsylvania law.

Cementing this analysis, we note that under the Borough Code, the power to appoint and remove police officers is entrusted to the borough council. 53 P.S. §46121.

Therefore, as members of council, councilpersons were uniquely qualified and exclusively authorized to comment upon the qualifications for an individual applying to Moosic Borough as a police officer and the manner in which his application is considered and acted upon. Since council has statutory authority over Moosic Borough's police force, any remarks concerning the police department are within the scope of the councilpersons' official duties and are privileged. See *Zdaniewicz,* 288 Pa. Super. at 425, 432 A.2d at 233-34. This would be so, even if the comments were made outside of the meeting as long as they relate to the councilpersons' official duties. *Mosley, supra.*

Based on the above analysis and as a matter of law, the councilpersons are entitled to the absolute privilege reserved for high public officials. Since their alleged remarks were clearly within the scope of their authority as members of Moosic Borough Council, they are immune from suit for slander. Therefore, the councilpersons named herein as defendants are entitled to summary judgment as a matter of law as to this count of plaintiff's complaint.

## V. IS MOOSIC BOROUGH IMMUNE FROM SUIT FOR DEFAMATION UNDER THE PENNSYLVANIA POLITICAL SUBDIVISION TORTS CLAIM ACT?

No dispute exists that Moosic Borough is a "local agency" for purposes of governmental immunity. See 42 Pa.C.S. §8501. The Tort Claims Act provides that exception to the immunity in the following categories:

(1) Vehicle liability;

(2) Care, custody or control of personal property;

(3) Real property;

(4) Trees, traffic control and street lighting;

(5) Utility service facilities;

(6) Streets;

(7) Sidewalks; and

(8) Care, custody or control of animals. 42 Pa.C.S. §8542(b).

The Tort Claims Act makes no exception for claims sounding in defamation. *Petula v. Mellody,* 158 Pa. Commw. 212, 217, 631 A.2d 762, 765 (1993); *Goralski v. Pizzimenti,* 115 Pa. Commw. 210, 540 A.2d 595 (1988).

Further, Moosic Borough cannot be held secondarily liable for alleged slanderous statements uttered by its employees and officials since a governmental agency cannot be held liable under a theory of respondent superior. This is especially so in the present case, where the individual agency employees are public officials who themselves also enjoy their own absolute privilege. *Mont-*

*gomery v. Philadelphia,* 392 Pa. 178, 186, 140 A.2d 100, 105 (1958); *Kuzel v. Krause,* 658 A.2d 856, 858 (Pa. Commw. 1995).

Therefore, Moosic Borough is entitled to summary judgment as a matter of law as to Count II.

## VI. IS MAYOR McDONOUGH IMMUNE UNDER THE PENNSYLVANIA POLITICAL SUBDIVISION TORT CLAIMS ACT FROM LIABILITY FOR ANY ALLEGED NEGLIGENT FAILURE TO SATISFACTORILY PERFORM HIS OFFICIAL DUTIES?

It is clear that Count III of the plaintiff's amended complaint sounds in negligence. (See amended complaint ¶¶51-52.) It is also clear that the basis for the plaintiff's claim of negligence is that: "statements from the chief of police said my name was on the list of officers he gave to the mayor. That list as read at the council meeting did not have my name on it. The former and present council members said it should have my name on the list and he denied it." (Plaintiff's answers to interrogatories no. 38.)

As a matter of law, the Tort Claims Act provides that local agency employees such as Mayor McDonough are immune from suit arising from acts which are within their official duties to the same extent as the local agency by which they are employed. 42 Pa.C.S. §8545.

As mentioned before, only negligent acts falling within one of the eight enumerated exceptions may result in liability on a local agency employee. See 42 Pa.C.S. §8545(b) (*supra*). The doctrine of official immunity embodied in the Act affords immunity from personal accountability to public officials for negligence occur-

ring within the scope of their duties absent showing that the conduct falls within one of the recognized exceptions. Considering that Mayor McDonough had no duty or authority to appoint and remove police officers in the first place, since 53 P.S. §46121 reserves that right to borough council, the plaintiffs cannot even establish a prima facie case of negligence. Moreover, assuming arguendo, they could establish negligence, it is not within one of the eight recognized exceptions of 42 Pa.C.S. §8542(b). Since the plaintiffs have not shown that a common-law or statutory cause of action for negligence exists nor have they shown that the negligent act falls within one of the recognized exceptions mentioned above, their claim in Count III against Mayor McDonough is insufficient as a matter of law and the mayor is entitled to summary judgment in his favor as per said Count III. *Tyree v. City of Pittsburgh,* 669 A.2d 487 (Pa. Commw. 1995).

## VII. DOES MR. SCHRANK FAIL, AS A MATTER OF LAW, TO STATE A CLAIM FOR FRAUD AGAINST MAYOR McDONOUGH SINCE HE DOES NOT ALLEGE A FALSE REPRESENTATION UPON WHICH HE RELATED TO HIS DETRIMENT?

To establish a claim for fraud, a plaintiff must show (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker to induce the recipient thereby; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the misrepresentation. *Thomas v. Seaman,* 451 Pa. 347, 350-51, 304 A.2d 134, 137 (1973).

Nothing in the record points to evidence which would establish a fraudulent misrepresentation by Mayor

McDonough upon which Mr. Schrank relied to his detriment. If anything, the plaintiffs are alleging that the borough council relied on Mayor McDonough's representation. It must be as a matter of law, the plaintiff who is the recipient of the fraudulent utterance, not the borough council. See *Thomas, supra.*

Therefore, Mr. Schrank's claim of fraud does not meet the essential elements set forth as a matter of law and Mayor McDonough is entitled to summary judgment on Count III of plaintiff's complaint dealing with fraud.

## VIII. DOES MR. SCHRANK FAIL, AS A MATTER OF LAW, TO STATE A CLAIM FOR WRONGFUL DISCHARGE SINCE HE WAS AT ALL TIMES AN AT-WILL EMPLOYEE SUBJECT TO SUMMARY DISMISSAL?

In Count IV of the amended complaint, Mr. Schrank alleges a claim for unlawful termination based upon Moosic Borough's failure to reinstate him on the police force on January 4, 1994. (Amended complaint at ¶¶53-55.) Mr. Schrank does not allege a contract for a definite term of employment or violation of a recognized public policy, but alleges that defendants breached a general, unspecified duty to carry out their official responsibilities in a fair and reasonable manner by failure to reinstate him without proper cause. (See amended complaint ¶¶53-55.)

In discovery, Mr. Schrank testified he was a non-union, non-civil-service employee of Moosic Borough. He has not brought forth any employment contract, collective bargaining agreement or statute, which would guarantee

him continued employment as a part-time police officer but stated he was hired for no express term or duration. (See Schrank dep. tr. (Vol. I) pp. 59-60; Schrank dep. tr. (Vol. II) pp. 4, 26; Schrank dep. tr. (Vol. I) pp. 49, 59-60; answers to interrogatories ¶39(c); Schrank dep. tr. (Vol. I) pp. 11-12, 59-60.)

The law is clear that governmental workers have no per se right to governmental employment. *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 2, 693 A.2d 190, 191 (1997). Instead, public employees are "at-will" and remain subject to summary dismissal unless the legislature explicitly conferred tenure as an integral part of a comprehensive governmental employment scheme embracing the public employee *or* terminating an "at-will" employee violates a clear mandate of public policy. *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 157, 166 A.2d 278, 281 (1960); *Boldoc v. Board of Supervisors, Lower Paxton Township,* 152 Pa. Commw. 248, 618 A.2d 1188 (1992); *Pivarnik v. PennDOT,* 82 Pa. Commw. 42, 45-46, 474 A.2d 732, 734 (1984); *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1998).

Since, as a matter of law, Mr. Schrank is an "at-will" employee and has produced no evidence to submit to a jury that there exists a valid enforceable employment contract or that his dismissal violates a recognized public policy (for example, that he was terminated because he filed a workers' compensation claim, see *Shick, supra*), he cannot, as a matter of law, maintain an action for wrongful discharge. Therefore, defendants are entitled to summary judgment in their favor as to Count IV of the plaintiff's amended complaint.

## IX. DOES MRS. SCHRANK FAIL, AS A MATTER OF LAW, TO STATE A CLAIM FOR LOSS OF CONSORTIUM?

Counts V through VII of plaintiff's amended complaint allege a claim for loss of consortium on behalf of Mrs. Schrank. (Amended complaint ¶¶56-64.) Since the underlying claims by her husband have been dismissed, her derivative claim of loss of consortium must also automatically fail as a matter of law. *Kiers by Kiers v. Weber National Stores Inc.,* 352 Pa. Super. 111, 507 A.2d 406 (1986); *Scattaregia v. Shin Shen Wu,* 343 Pa. Super. 452, 495 A.2d 552 (1985); *Little v. Jarvis,* 219 Pa. Super. 156, 162, 280 A.2d 617, 620 (1971). Therefore, defendants are entitled to summary judgment as to Counts V through VII of the amended complaint.

## X. CONCLUSION

Reviewing the entire record in the light most favorable to the plaintiffs, they failed to establish the essential elements of any cause of action set forth in their amended complaint for the legal and factual reasons set forth above.

Therefore, defendants are entitled to summary judgment as to all counts of plaintiff's amended complaint.

An appropriate order follows.

## ORDER

And now to wit, February 7, 2000, in accordance with the foregoing memorandum, it is hereby ordered and decreed that defendants' motion for summary judgment is granted. Plaintiff's action is hereby dismissed with prejudice and judgment is entered in favor of all defendants.